**CF&I Steel Corporation v.**
**The Colorado Air Pollution Control Commission, et al.**
**No. 79SC40**
**No. 79SC42**
**Colorado-Ute Electric Association, Inc., et al. v.**
**Colorado Air Pollution Control Commission, et al.**

(610 P.2d 85)

Decided March 3, 1980.                    Rehearing denied April 28, 1980.

Welborn, Dufford, Cook and Brown, David W. Furgason, John D. Faught, for petitioner CF&I Steel Corporation.

Holland & Hart, Robert T. Connery, Jane Michaels Talesnick, for petitioners, Colorado Ute Electric Association, Colorado Association of Commerce and Industry, Tri-State Generation and Transmission Association, Inc.

Gordon D. Hinds, City Attorney, Tad S. Foster, Deputy, for petitioner, City of Colorado Springs.

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, for petitioner, Public Service Company of Colorado.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Edward G. Donovan, Solicitor General, Hubert A. Farbes, Jr., First Assistant Attorney General, Janet M. Clouse, Assistant, for respondents, Colorado Air Pollution Control Commission and its members.

David Mastbaum, Paula C. Phillips, for respondent, Environmental Defense Fund, Inc.

*En Banc.*

JUSTICE GROVES delivered the opinion of the Court.

We granted certiorari to review the court of appeals' decisions in *CF&I Steel Corporation v. The Colorado Air Pollution Control Commission,* ____Colo. App. ____, 606 P.2d 1306 (1978) and *Colorado Ute Electric Association, Inc. v. The Air Pollution Control Commission of the Colorado Department of Health,* 41 Colo. App. 393, 591 P.2d 1323 (1978).[1]

We reverse.

---

[1] The other parties in *CF&I* are the respondents Colorado Department of Health, its Division of Administration, and the Air Pollution Control Division of the Division of Administration.
The other petitioners in *Colorado Ute* are Colorado Association of Commerce and Industry, Tri-State Generation and Transmission Association, Inc., City of Colorado Springs and Public Service Company of Colorado. The other respondents in *Colorado Ute* are the individual members of the Commission, the Air Pollution Control Division of the Colorado Department of Health, Dr. Edward G. Dreyfus, Executive Director, and Environmental Defense Fund.

The actions originated independently. The court of appeals wrote separate opinions, deciding in both cases that the plaintiffs lacked standing to bring the respective actions. As both cases present the identical issue, we consolidated them for oral argument and we now make disposition in this one opinion.

The factual backgrounds of the two actions are similar. Plaintiffs in both actions sought judicial review of certain air pollution control regulations promulgated by the respondent, the Colorado Air Pollution Control Commission (the Commission). The Commission adopts regulations under authority of the Colorado Air Pollution Control Act (the Act), section 25-7-101 *et seq.*, C.R.S. 1973.

CF&I Steel Corporation (CF&I) initiated its action in September 1974, challenging the validity of Regulation No. 1, § II, D, known as the "fugitive dust regulation."[2]   This is an emission control regulation of statewide application, effective August 1, 1974. Its object is to limit dust emissions emanating from unenclosed operations. It sets forth several methods of determining whether pollutants are exceeding an acceptable level. It prescribes specific abatement measures for certain existing and new sources of pollution and lists permit requirements necessary to the installation or operation of new sources. Enforcement alternatives as to the regulation include cease and desist orders, injunctions, and civil penalties. Section 25-7-113, 118, 119, C.R.S. 1973.

CF&I is a manufacturer of iron and steel products and, among other activities, owns and operates a steel plant at Pueblo, Colorado. The plant uses large quantities of coal, limestone, iron ore and other materials. Admittedly, the materials, operations and facilities of the Pueblo steel plant are sources of fugitive dust as defined in the regulation. CF&I operations create additional fugitive dust to which the regulation applies, *viz.*, farming, open mines and quarries. It is not disputed that CF&I's activities are embraced within the scope of the regulation.

Colorado Ute Electric Association, Inc. (Colorado Ute) filed its action in March 1976 claiming invalid Regulation No. 3, § II, H. 1. a (effective January 19, 1976) which sets forth conditions necessary to obtain an emission permit. Emission permits are required prior to construction or substantial alteration of any direct source of air contaminants, other than single family residential dwellings. Regulation No. 3 allows the denial of

---

[2] The regulation defines "fugitive dust" as:
"Solid airborne particulate matter emitted from any source other than an opening which channels the flow of air contaminants and then exhausts the contaminants directly into the atmosphere. Fugitive dust also includes solid particles released into the atmosphere by natural forces or by mechanical processes such as crushing, grinding, milling, drilling, demolishing, shoveling, conveying, covering, bagging, sweeping, etc."

emission permits if the proposed source of pollutants would interfere with state or local ambiant air quality standards. The standards set out in Regulation No. 3 are claimed to be more stringent than those required by federal authorities. Colorado Ute claimed that, as it has in the past, it will in the future apply for emission permits and therefore is subject to Regulation No. 3.

Both plaintiffs alleged that, in promulgating the challenged regulations, the Commission exceeded its statutory authority, abused its discretion and acted arbitrarily and capriciously. CF&I further alleged that the fugitive dust regulation was vague, ambiguous and overbroad. Colorado Ute in its complaint alleged that Regulation No. 3 fixed state air pollution standards stricter than federal standards, contending that the latter were all that were presently authorized by the Act. Colorado Ute and the other petitioners in that action claim that compliance with Regulation No. 3 emission permit standards is extremely costly, unnecessary for federal regulatory purposes, and therefore beyond the Commission's statutory authority.

The trial court in each case held for the Commission, ruling the regulations at issue to be valid.

Both plaintiffs appealed to the court of appeals. That court at oral argument in each case raised *sua sponte* the question of petitioners' standing to seek judicial review. By a two to one decision, it remanded each cause to the district court with directions to dismiss, ruling that plaintiffs lacked standing under the Administrative Procedure Act (APA), C.R.C.P. 106, C.R.C.P. 57, or section 13-51-101 *et seq.*, C.R.S. 1973, to challenge the validity of the regulations. The court so concluded by reasoning that neither Colorado Ute nor CF&I qualified as an "aggrieved or adversely affected" party, as required for standing by the APA, since the challenged regulation had not been specifically applied against the plaintiff.[3] The court also stated that: (1) judicial review was premature in that mere promulgation of a rule of general application does not constitute final agency action; and (2) since Colorado Ute had not yet applied for and been denied an emission permit for failure to comply with Regulation No. 3, Colorado Ute had not suffered injury in fact, monetary or otherwise, as required for standing.

The dissenting judge to both opinions expressed the view that under the APA (section 24-4-106(4)) and *Colorado State Board of Optometric Examiners v. Dixon,* 165 Colo. 488, 440 P.2d 287 (1968), a commission's promulgation of a regulation was reviewable as final agency

---

[3] Although the court of appeals stated that the fugitive dust regulation had not been enforced against CF&I, CF&I noted in its petition for rehearing to that court that it had been subjected to cease and desist orders regarding compliance with the regulation even while its action was pending before the district court.

action once it was in effect. He stated his opinion that (1) Colorado Ute was indeed a party adversely affected or aggrieved in that, without a prior determination of the validity of the regulation, Colorado Ute would be forced to expend compliance costs which might later prove unnecessary, and (2) CF&I was not required to violate the regulation and become involved in enforcement proceedings in order to gain standing to challenge the regulation.

The single issue brought and argued before this court is whether CF&I and Colorado Ute have standing to challenge the validity of, respectively, the fugitive dust regulation and Regulation No. 3. The resolution of the issue involves two inquiries: (1) whether the plaintiffs have standing under the APA, and (2) whether a declaratory judgment is appropriate for determining the validity of the regulations.

CF&I argues that it is entitled to seek judicial review under the APA and that it may seek a declaratory judgment under the Colorado Uniform Declaratory Judgments Law (section 13-51-101 *et seq.*, C.R.S. 1973) and under C.R.C.P. 57.

Respondents in *CF&I* agree with CF&I that it has standing to seek a declaratory judgment. They contend, however, that CF&I lacks standing to seek judicial review under the APA, not for the reason advanced by the court of appeals, but for the reason that CF&I is not a "party" as defined by the APA. They argue that because CF&I has not followed the prerequisites to party status set out in the Act and the APA, CF&I does not qualify as a party. Consequently, they assert, CF&I does not have a right under the APA to bring suit to challenge the regulation.

All the parties in *Colorado Ute* seek reversal of the court of appeals' decision in that case. They all agree that Colorado Ute was a "party adversely affected or aggrieved," that the promulgation of Regulation No. 3 was reviewable as a final agency action, and that a declaratory judgment was a proper method by which to obtain a determination of the regulation's validity.

## I.
## STANDING UNDER THE APA

We first address the court of appeals' position that the plaintiffs in each case did not have standing under the APA to challenge the validity of the regulations because the regulations had never been enforced against them.

To determine whether the APA allows one to seek judicial review in these circumstances, we look at the appropriate APA provisions. Section 24-4-106(1)-(4) provides for judicial review of an agency's actions.

"(1)  In order to assure a plain, simple, and prompt judicial remedy to persons or parties adversely affected or aggrieved by agency actions, the provisions of this section shall be applicable.

"(2)   Final agency action under this or any other law shall be subject to judicial review as provided in this section, whether or not an application for reconsideration has been filed, unless the filing of an application for reconsideration is required by the statutory provisions governing the specific agency. In the event specific provisions for rehearing as a basis for judicial review as applied to any particular agency are in effect on or after July 1, 1969, then such provisions shall govern the rehearing and appeal procedure, the provisions of this article to the contrary notwithstanding.

"(3)   An action may be commenced in any court of competent jurisdiction by or on behalf of an agency for judicial enforcement of any final order of such agency. In any such action, any person adversely affected or aggrieved by such agency action may obtain judicial review of such agency action.

"(4)   Any party adversely affected or aggrieved by any agency action may commence an action for judicial review in the district court in accordance with the rules of civil procedure within sixty days after such agency action becomes effective. A proceeding for such review may be brought against the agency by its official title, individuals who comprise the agency, or any person representing the agency or acting on its behalf in the matter sought to be reviewed. The complaint shall state the facts upon which the plaintiff bases the claim that he has been adversely affected or aggrieved, the reasons entitling him to relief, and the relief which he seeks. Every party in the agency action not appearing as plaintiff in such action for judicial review shall be made a defendant. Thereafter service of process, responsive pleadings, and other matters of procedure shall be controlled by the rules of civil procedure. The residence of a state agency for the purposes of this subsection (4) shall be deemed to be the city and county of Denver."[4]

It is evident that under this section, if the Commission's adoption of a regulation is a "final agency action," and if CF&I and Colorado Ute are parties "adversely affected or aggrieved," they may commence an action in the district court for judicial review within 60 days after the effective date of a regulation.

■ The Commission was made part of the Department of Health pursuant to section 25-7-104, C.R.S. 1973. Under the APA it is an "agency" and therefore is subject to the provisions of the APA. Section 24-4-102(3) and 107, C.R.S. 1973.

The definition of "action" by an agency includes an "agency rule, order, interlocutory order, license, sanction, relief or the equivalent or denial thereof, or failure to act", Section 24-4-102(1). The definition of "rule" is

---

[4] The 60-day period in which review may be sought was later shortened to 30 days by amendment in 1976. Section 24-4-106(4), C.R.S. 1973 (1978 Supp.). The 60-day period was in effect at the time both actions here were initiated.

"any part of every agency statement of general applicability and future event implementing . . . or setting forth the . . . practice requirements of any agency . . . ." including "regulation." Section 24-4-102(15), C.R.S. 1973. It is undisputed that the effective date of each regulation had been reached at the time the respective complaints were filed in the trial court and that the complaints were filed within the proper time period.

■ In contrast to the court of appeals' statement in *Colorado Ute* that the "promulgation of a rule of . . . general application does not, in itself constitute a final agency action . . .", it is plain that under the APA once a commission's rule or regulation has been promulgated and is in effect, the agency action is final as to that particular regulation. We note that this conclusion agrees with that expressed by the General Assembly as it recently amended the APA:

"Once a rule becomes effective, the rule-making process shall be deemed to have become final agency action for judicial review purposes." Colo. Sess. Laws 1979, ch. 212, 24-4-103 at 842.

The next step necessary to determine standing under the APA is whether a plaintiff qualifies as one of the "person or parties adversely affected or aggrieved by agency actions" who thereby is able to seek the "plain, simple, and prompt judicial remedy" espoused in section 24-4-106. The APA defines "party" to include "any person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in any court or agency proceeding subject to the provisions of this article." Section 24-4-102(11). The definition of person includes an "individual, partnership, corporation, association, and public or private organization of any character other than an agency." Section 24-4-102(12).

The Attorney General, representing the Commission, believes that these sections require that, before one be qualified as a party and thereby able to seek judicial review of an agency action, one must have been admitted as a party to the agency's proceeding concerning the regulation. He argues that the Act refines the APA definition of "party" by setting as a prerequisite to being admitted as a party to its proceeding that one file an alternative regulation not less than 20 days prior to the hearing on the proposed regulation. Meeting this requirement of filing an alternative regulation qualifies one to cross-examine witnesses at the hearing on the proposed regulation. Section 25-7-109, C.R.S. 1973. The Attorney General equates one's status as a cross-examiner with party status. He reasons that because CF&I failed to file an alternative regulation, and thereby was unable to cross-examine witnesses at the hearing, CF&I is not a party as contemplated by the APA. He concludes that lacking party status, CF&I is not now able to seek judicial review of the regulation.

■ To define "party" as the Attorney General urges would put a heavy and unreasonable burden upon many persons. In order to preserve one's right to seek judicial review of a final air pollution control

regulation, one would be required to have filed an alternative to the proposed regulation, whether or not one disagreed with the proposed regulation. Such cannot have been the intent of the General Assembly. Reading the APA in its entirety, even noting the various usages of the words "persons" and "parties", one must conclude that in order to achieve the contemplated "plain, simple and prompt judicial review" of agency action, the General Assembly must have intended a broader definition of "party". We hold that CF&I is a party as defined by section 24-4-102(11) and as the term is used conferring a right of review in section 24-4-106(4).

■ The next necessary determination is whether the plaintiffs qualify as parties "aggrieved or adversely affected" by the promulgation of the regulation. The court of appeals stated in *Colorado Ute* that only when one's "rights, privileges, or duties are directly and adversely affected by the [administrative] action" does one enjoy a right to judicial review. In support of that statement the court cited *Board of County Commissioners v. State Board of Social Services,* 186 Colo. 435, 528 P.2d 244 (1974). In that case, as here, the issue concerned appellant's standing. There, however, the inquiry focused on whether the County Commissioners were a party, not on whether they were adversely affected or aggrieved by the agency action. In holding that the County Commissioners were not a party under 1969 Perm. Supp., C.R.S. 1963, 3-16-5 (the predecessor to section 24-4-106, the statute under consideration here), we said:

"[t]he right to judicial review of the final administrative actions . . . is limited to those parties to the proceeding before the administrative agency whose rights, privileges or duties, *as distinct from those of the State,* are adversely affected by the decision. The county as an arm of the State Board of Social Services has no rights or privileges so far as its statutory duties are concerned and hence does not come within the definition of 'party.'" (Emphasis added.) *Board of County Commissioners v. State Board of Social Services, supra.*

It does not follow that Colorado Ute and CF&I, clearly not state entities and clearly having certain duties imposed upon them by the regulations, should be denied a right to judicial review of those regulations. Furthermore, we note again that no party before us contests that the plaintiffs' activities are exactly those to which the respective regulations apply and that their application adversely affects the plaintiffs.

In contrast to *County Commissioners* is *Colorado State Board of Optometric Examiners v. Dixon,* 165 Colo. 488, 440 P.2d 287 (1968). In *Dixon,* the issue was whether the district court could properly enjoin the state Board of Optometric Examiners from enforcing a newly-adopted regulation. There respondents contested the injunction on the basis that the regulation was not a final action in that the commencement of the suit preceded the effective date of the regulation. While there the requirement

of finality of agency action was challenged, and here we are concerned with the requirement that the plaintiff be adversely affected or aggrieved, the rationale and reasoning set out in *Dixon* applies equally well to our present concern.

■ In *Dixon* we embraced as appropriate for modern times the view that one is not required to risk violation of a statute or rule in order to obtain a declaration of its invalidity. In so holding, we expressly overruled earlier cases contrary to that proposition. We believe that that proposition remains sound. Even where a regulation is of general applicability, and even where enforcement measures concerning compliance with the regulation have not yet been specifically against an individual, whether it be a permit denial, a cease or desist order, or the like, we can see nothing in the APA that denies standing to that individual to initiate a pre-enforcement challenge to the validity of the regulation, if he is subject to its demands.[5] *See 2 F. Cooper. State Administrative Law,* 1965, p. 538; *accord, Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

We note at this juncture that the court of appeals mistakenly relied upon *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977) to conclude that because Colorado Ute had not yet suffered an injury in fact it did not qualify as "aggrieved." In contrast to the plaintiffs here, the plaintiffs in *Wimberly* had alleged that the defendant had already caused them severe financial losses. Consequently we were there concerned with whether plaintiffs' complaints reflected injury directly caused by the defendant, or whether the financial losses were merely incidental to the defendant's conduct, and therefore an insufficient basis on which to find standing. Furthermore, as respondents point out, the pertinent statements in that opinion are to the effect that the proper inquiry to be made as to the injury in fact requirement is "whether the action complained of has caused or *threatens to cause* injury in fact" to the plaintiff (emphasis added).

## II.
## DECLARATORY JUDGMENT

■ We do not share the conclusion of the court of appeals that a declaratory judgment is an inappropriate procedure by which to seek review of a regulation. Both C.R.C.P. 57 and section 13-51-106, C.R.S. 1973, specify who may obtain a declaratory judgment in these circumstances:

---

[5] We note that in 1979 the General Assembly added the definition of aggrieved to section 24-4-102, the definition section of the APA:
"'Aggrieved', for the purpose of judicial review of rule making, means having suffered actual loss or injury or being exposed to potential loss or injury to legitimate interests including, but not limited to, business, economic, aesthetic, governmental, recreational, or conservational interests." 1979 Sess. Laws, ch. 212, 24-4-102 at 842.

"Any person . . . whose rights, status, or other legal relations are affected by statute . . . may have determined any question of . . . validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder."

As previously discussed, it is plain that both CF&I and Colorado Ute are persons whose rights, status and legal relations are affected by the regulations, which themselves are derived from statute.

We refer again to the principle espoused in *Dixon, supra,* that one adversely affected by a rule of a commission need not risk violating it before seeking a declaratory judgment as to its validity. That principle has been recently reaffirmed in *Johnson v. District Court,* 195 Colo. 169, 576 P.2d 167 (1978). *See also Moore v. District Court,* 184 Colo. 63, 518 P.2d 948 (1974). *See generally* 3 *K. Davis. Administrative Law Treatise,* § 21.09 (1970 Supp.).

The court of appeals apparently had the misconception that *Cimarron Corp. v. Board of County Commissioners,* 193 Colo. 164, 563 P.2d 946 (1977) suggested that a declaratory judgment is not the proper procedure by which to make a pre-enforcement challenge to a regulation. The statement relied upon in *Cimarron* is that when "[t]he record . . . contains no evidence that the challenged portions of these regulations have ever been applied against appellants . . . a declaratory judgment is inappropriate." Cited in support of that statement is *Heron v. Denver,* 159 Colo. 314, 411 P.2d 314 (1966), which was overruled in 1968 by *Dixon, supra,* as to its holding regarding declaratory judgments. Consequently, the statement in *Cimarron* is no longer controlling.

The court of appeals cited *Utah International, Inc. v. Board of Land Commissioners,* 41 Colo. App. 72, 579 P.2d 96 (1978) for the proposition that a declaratory judgment should not be used for a purely advisory opinion. We do not disagree with that proposition. We simply restate our conclusion that plaintiffs, by asking for a declaratory judgment as to the validity of the regulations, were in fact properly seeking to have established their rights and obligations as set out in the respective regulations.

The judgments are reversed and the causes are remanded to the court of appeals for a determination on the merits of the issues presented to it on the appeals.

JUSTICE DUBOFSKY does not participate.