The AIR POLLUTION CONTROL COMMISSION OF the COLORADO DEPARTMENT OF HEALTH, Dr. James Lodge, Dr. John Cobb, Mitchell Stimmons, Gerald Jensen, Dr. Val Veirs, Laboyta Garnand, Charles McFee, Dr. David Kelble, Vinton Pierce, Commissioners, and Their Successors in Office from Time to Time, the Air Pollution Control Division of the Colorado Department of Health, the Colorado Department of Health, Dr. Edward G. Dreyfus, Executive Director, Environmental Defense Fund, Petitioners,

v.

COLORADO–UTE ELECTRIC ASSOCIATION, INC.; Colorado Association of Commerce and Industry; and Tri-State Generation & Transmission Association, Inc., Respondents.

No. 82SC122.

Supreme Court of Colorado,
En Banc.

Nov. 15, 1983.

Rehearing Denied Dec. 19, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., David K. Rees, Lawrence A. DeClaire, Asst. Attys. Gen., Denver, for petitioners.

Holland & Hart, Robert T. Connery, Jane Michaels Talesnick, Steven V. Moser, Denver, for respondents.

LOHR, Justice.

This case arises from a complaint filed in Denver District Court by Colorado-Ute Electric Association, Inc. (Colorado-Ute),

seeking a judicial determination of whether adoption of subsection (II)(H)(1)(a) of Regulation No. 3 by the Colorado Air Pollution Control Commission (Commission) exceeded its authority under the Air Pollution Control Act of 1970 (1970 Act), Colo.Sess.Laws 1970, ch. 64, § 66–31–1 et seq. at 220–38.[1] After the trial court determined that the regulation was a valid exercise of the Commission's authority and the Colorado Court of Appeals reversed the trial court's judgment on its merits, we granted certiorari. Having determined that there is no continuing controversy on this issue as it has been narrowly framed by the pleadings, we hold that the case is moot and remand to the court of appeals for vacation of its judgment and dismissal of the appeal.

Under the 1970 Act, the Commission had the power to adopt and amend ambient air quality (AAQ) standards and emission control regulations. Colo.Sess.Laws 1970, ch. 64, §§ 66–31–7 and –8 at 224–25. The Air Pollution Control Division of the Department of Health (Division) administered and enforced the programs and regulations adopted by the Commission. Colo.Sess. Laws 1970, ch. 64, § 66–31–10 at 226–27.[2]

On November 13, 1975, the Commission repealed and readopted its Regulation No. 3, effective January 19, 1976. This regulation governed air contaminant emission notices and permits. Subsection (II)(H) of that regulation is entitled "Standards for Granting, Denying and Revoking a Permit," and provides in part:

1. The Division shall grant an emission permit if and when it determines that:

    a. The direct source will meet rules and regulations of the Commission and would not interfere with the attainment or maintenance of applicable federal and state ambient air quality standards and any more stringent local ambient air quality standards.

Regulation No. 3 (1976), subsection (II)(H)(1)(a).

On March 12, 1976, Colorado-Ute, which had been a participant in the administrative proceeding resulting in the adoption of Regulation No. 3, sought review of this agency action under section 24–4–106, C.R.S. 1973 (1982 Repl.Vol. 10), by filing a complaint against the Commission, its individual members, the Division, the Colorado Department of Health, and the executive director of the Department of Health (collectively, the state defendants). The other participants in the Commission proceedings were named as defendants in the district court action. The state defendants and the Environmental Defense Fund supported the new regulation. The other named defendants were either dismissed from the action or aligned themselves with Colorado-Ute by filing cross-claims against the state defendants and the Environmental Defense Fund. Tri-State Generation and Transmission Association, Inc. intervened and adopted the same position as Colorado-Ute and the cross-claimants.

In the complaint, Colorado-Ute alleged that the Commission had acted beyond its statutory authority in adopting subsection (II)(H)(1)(a). Specifically, Colorado-Ute asserted that the regulation conflicted with the standards prescribed by the legislature in an amendment to the 1970 Act, Colo.Sess. Laws 1973, ch. 212, § 66–31–12(4)(e) at 739–40, for determining whether an air contaminant emission permit should be granted. When Regulation No. 3 (1976) was adopted, this statute provided in relevant part:

    [T]he division shall grant the permit unless it determines that the proposed project or activity would not meet appli-

---

1. In 1979, the Air Pollution Control Act of 1970 was repealed and replaced by the Colorado Air Quality Control Act. Colo.Sess.Laws 1979, ch. 266, § 25–7–101 et seq. at 1017–61. The new act is codified at section 25–7–101 et seq., C.R.S. 1973 (1982 Repl.Vol. 11). Because the 1970 Act does not appear in the current replacement volume of the Colorado Revised Statutes, we cite to the Colorado Session Laws where the relevant sections can be found.

2. Although the Commission and the Division are granted similar powers under both the 1970 Act and the 1979 Act, for purposes of this discussion we shall refer only to the authority and responsibilities delegated to the Commission and the Division under the 1970 Act.

cable emission standards or regulations of the commission or would interfere with the attainment or maintenance of the then existing federal primary or secondary ambient air standards .... Any permit issued by the division may contain such terms and conditions as it deems necessary for the proposed project or activity to qualify for a permit. If any of such terms or conditions of the permit are violated, the division may revoke the permit.

Based on this statute, Colorado-Ute contended that the Commission could require compliance only with federal AAQ standards in determining whether to issue a permit, and that by requiring compliance with state and local AAQ standards in Regulation No. 3 (1976) the Commission had exceeded its authority.

The trial court rejected this argument in a detailed order dated May 9, 1977. The court noted that the regulation must be assessed in light of the remedial purpose of the 1970 Act, that the legislature had intentionally delegated broad regulatory authority to the Commission, and that § 66–31–12(4)(e) did not on its face limit the regulatory authority of the Commission. The court concluded that limiting the Commission's regulatory authority over emission permits to require compliance only with federal primary or secondary AAQ standards would give insufficient effect to the general policy and purpose of the statute. It also noted that where the legislature intended to restrict the criteria for emission permits to federal standards, as it did in the case of "indirect air contamination sources," the legislature had made this intent manifest. Colo.Sess.Laws 1973, ch. 212, § 66–31–12(4)(a) at 739.

The court rejected Colorado-Ute's argument that such a result could not have been intended by the legislature because AAQ standards are merely goals for the entire air shed and failure to attain those goals cannot be attributed to a particular source

of emissions. Even accepting the premise that it is difficult to relate violations of AAQ standards to a particular source, the court reasoned that "the level of pollutants in the air shed can most effectively be controlled by regulation of point-source emissions through the emission permit process."

Colorado-Ute appealed this decision. The Colorado Court of Appeals held that Colorado-Ute and the other appellants did not have standing to challenge the regulation. *Colorado-Ute Electric Association, Inc. v. Air Pollution Control Commission,* 41 Colo. App. 393, 591 P.2d 1323 (1978). Consequently, it ordered the trial court's judgment set aside and remanded with directions to dismiss the action. This court granted certiorari and reversed the judgment of the court of appeals, holding that there was standing to bring the suit. *CF & I Steel Corporation v. Colorado Air Pollution Control Commission,* 199 Colo. 270, 610 P.2d 85 (1980). The case was then remanded to the court of appeals for a decision on the merits.

Following this court's decision in *CF & I,* and the replacement of the Air Pollution Control Act of 1970 with the Colorado Air Quality Control Act, however, the Commission repealed and reenacted Regulation No. 3 on June 5, 1980, effective July 30, 1980. 5 C.C.R. 1001–5. The new regulation requires consideration of state AAQ standards in the emission permit review process only where no applicable federal AAQ standard has been established. No provision is made for utilizing local AAQ standards. Based on the new statute and regulations, the state defendants filed a motion to dismiss the action on the ground that it had become moot. Colorado-Ute opposed the motion, contending that the case is not moot because permits issued pursuant to Regulation No. 3 (1976) continue in full force and effect under section 25–7–114(4)(k) of the new Colorado Air Quality Control Act.[3] Specifically, Colorado-Ute

---

**3.** Section 25–7–114(4)(k), C.R.S. 1973 (1982 Repl.Vol. 11), provides that "[a]ny permit issued prior to June 20, 1979, with respect to a

project or the operation thereof shall continue in full force and effect and, on and after June

pointed to construction and operation permits issued for two of its electric generating units known as Craig Station Units 1 and 2.[4]

The Commission countered that Colorado-Ute was not in a position to challenge the conditions on the permits for Craig Station Units 1 and 2, even if those conditions were improperly imposed, because Colorado-Ute had failed to exhaust its administrative remedies. Colorado-Ute could have sought review of the Commission's September 9, 1976, decision upholding the conditions by commencing an action under section 24–4–106, C.R.S. 1973 (1982 Repl.Vol. 10), of the State Administrative Procedure Act.[5] Although Colorado-Ute continued to insist that the validity of Regulation No. 3 was not moot, it emphasized that the Craig Station permit conditions were not before the court. The only relevance of those conditions, according to Colorado-Ute, was as they related to the mootness of the contested regulation.[6]

It was in this context that the court of appeals issued its decision. The court of appeals held that the question of whether the Commission acted within the scope of its statutory authority in issuing Regulation No. 3 was moot. It concluded, however, that Colorado-Ute's objection to the permit conditions imposed on Craig Station Units 1 and 2, which required continuing compliance with state AAQ standards, remained a viable issue because those permit conditions were of continuing effect. The court also concluded that exhaustion of administrative remedies was not necessary, because Colorado-Ute was challenging an interpretation of the Commission's enabling statute and such a challenge requires judicial review. Essentially, the court of appeals decided that the only surviving issue in the case was whether the Commission had the authority to make compliance with AAQ standards a condition to the continued validity of permits to operate electric power generating plants.

A majority of the court of appeals panel concluded that the Commission did not have such authority.[7] The court reasoned that

---

20, 1979, shall not be affected by the terms of this section ..."

4. The supplemental briefs filed by the parties on the mootness issue reflect that these permits contain conditions requiring continuous compliance by Colorado-Ute with state ambient air quality standards. The construction permit containing this condition was issued to Colorado-Ute by the Division on March 10, 1975. Colorado-Ute twice sought modification of the permit condition by the Division, and the requested relief was refused in each case. Colorado-Ute then appealed to the Commission, which issued an order on September 9, 1976, upholding the Division's construction permit condition requiring compliance with state AAQ standards. The Commission further ordered that the Division issue Colorado-Ute operating permits for Craig Station Units 1 and 2 without the necessity for any additional application from Colorado-Ute. However, the operating permits were also to be conditioned upon continuing compliance with state AAQ standards.

5. The state also argued that, even if the permit conditions could be contested, the validity of those conditions was not relevant to the mootness of the present challenge to Regulation No. 3 (1976) because: (1) the permit conditions were not imposed pursuant to the requirements of Regulation No. 3 (1976), but pursuant to a precursor of that regulation; (2) the permit conditions would have been imposed in any case on the basis of other, independent permit issuance criteria; and (3) current EPA regulations would not allow relaxation of the permit limitations once they had been imposed.

6. Colorado-Ute stated:
   The permits for Craig Station Units 1 and 2 are not at issue in this case. Their only relevance is on the issue of mootness. Response to Supplemental Memorandum in Support of State Defendants-Appellees' Motion to Dismiss, at 5.
   In the brief submitted to this court, Colorado-Ute added:
   Respondents agree that the issue of the validity of the specific permit conditions requiring compliance with state ambient air quality standards imposed upon Colorado-Ute was not explicitly raised or briefed before the courts below. Brief of Respondents, at 19.

7. Judge Berman dissented. He concluded that the Commission was explicitly authorized to consider compliance with AAQ standards as a condition for issuance of a permit and that, consequently, it also had authority to insert conditions in a permit requiring continuing compliance with those standards. Judge Berman expressed the view that the majority opinion was in conflict with the maximum flexibility and broad discretion granted the Commission under the 1970 Act. 648 P.2d at 155–56.

the Commission's authority over permit issuance was governed by Colo.Sess.Laws 1973, ch. 212, § 66–31–12(4)(e) at 739–40. This provision mandated that once the Division determined that the emission source complied with emission standards and regulations, and that the proposed project would not interfere with the attainment or maintenance of then-existing federal primary or secondary AAQ standards, the Division must issue the permit. Therefore, the 1970 Act did not allow the Commission to condition a permit on continued compliance with AAQ standards.[8] *Colorado-Ute Electric Association, Inc. v. Air Pollution Control Commission,* 648 P.2d 150, 153–54 (Colo.App. 1982). The court found this result to be consistent with its view that, while conformity with emission standards can be enforced, violation of AAQ standards by a specific permittee "is difficult, if not impossible, to determine." *Id.* at 154.

The state defendants petitioned for a writ of certiorari to review the court of appeals decision. The petitioners asked this court to determine (1) whether Regulation No. 3 (1976) was a valid exercise of the Commission's authority, (2) whether the court of appeals improperly addressed the validity of the permit conditions imposed on Craig Station Units 1 and 2, and (3) whether, if the validity of the permit conditions was properly presented, the court of appeals correctly resolved that issue.

We hold that only the first issue was properly before the court. The validity of Regulation No. 3 (1976), subsection (II)(H)(1)(a), is the sole issue framed by the pleadings and reflected in the pre-trial order. The parties to the suit all agreed that the permit conditions were not being presented to the court except as evidence on the issue of whether the validity of Regulation No. 3 (1976) was moot.

Since Regulation No. 3 (1976) has been repealed, the general question whether it was validly adopted is moot. Furthermore, because of the narrow way that the issue has been framed by the pleadings, this case does not present a challenge to the validity of any specific past application of that regulation. The fact that the validity of Regulation No. 3 (1976) might be presented in some future litigation challenging the effectiveness of the conditions of Colorado-Ute's permits offers no reason to decide now an issue that may never be raised. Whether such litigation will ever be instituted and, if it is, whether the question of the validity of Regulation No. 3 (1976) will be reached in such a prospective controversy is entirely conjectural. We consider it unnecessary and inappropriate to address a question having only speculative future utility. *Cf. Johns v. Powell,* 190 Colo. 88, 543 P.2d 1261 (1975); *First National Bank of Colorado Springs v. Struthers,* 121 Colo. 69, 215 P.2d 903 (1949). Thus, the court of appeals had no occasion to consider whether the conditions of Colorado-Ute's permits were appropriate under the 1970 Act.

We remand this case to the court of appeals with directions to vacate its judgment and dismiss the appeal.

DUBOFSKY, QUINN and KIRSHBAUM, JJ., do not participate.

---

**8.** The Craig Station permits apparently also required continuing compliance with federal AAQ standards. This condition was also invalidated as a result of the court of appeals' decision.