Rudolph A. LUCCHESI,
Plaintiff–Appellant,

v.

STATE of Colorado; Roy Romer, in his official capacity of Governor of the State of Colorado; the General Assembly of the State of Colorado; Ted L. Strickland, in his official capacity of President of the Senate, State of Colorado; Carl Bledsoe, in his official capacity as Speaker of the House of Representatives, State of Colorado; Duane Woodard, in his official capacity as Attorney General, State of Colorado; Paul D. Schauer, in his official capacity as State Representative, State of Colorado; Wayne Allard, in his official capacity as State Senator, State of Colorado; Property Tax Administrator, State of Colorado; Mary Anne Maurer, in her official capacity of Property Tax Administrator, Division of Property Taxation, Department of Local Affairs, State of Colorado; Board of County Commissioners, El Paso County, State of Colorado; Marcy Morrison, Jim Campbell, Charlie Meier, Gary Shupp, Loren Whittenmore; in their official capacity of Commissioners, El Paso County, State of Colorado; Sharon Shipley, in her official capacity as Treasurer, El Paso County, Colorado; Ted Shonts, in his official capacity as Assessor, El Paso County, Colorado; Beth Whittier, in her official capacity as Attorney, El Paso County Board of Commissioners, Defendants–Appellees.

No. 89CA0967.

Colorado Court of Appeals,
Div. V.

Sept. 6, 1990.*

Rehearing of Attorney General Granted in Part; Rehearing of El Paso County Denied; and Rehearing of Rudolph A. Lucchesi Denied Sept. 6. 1990.

Certiorari Denied April 8, 1991.

* Prior Opinion announced July 5, 1990 was with-      drawn.

Rudolph A. Lucchesi, pro se.

Beth A. Whittier, County Atty., Ann A. Maenpaa, Asst. County Atty., Colorado Springs, for defendants-appellees El Paso County and El Paso County Officers.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Denver, for defendants-appellees State of Colo., Roy Romer, Duane Woodard and Mary Ann Maurer.

Welborn Dufford Brown & Tooley, P.C., Philip G. Dufford, Gregory A. Ruegsegger, Denver, for Legislative defendants-appellees.

Opinion by Judge CRISWELL.

Plaintiff, Rudolph A. Lucchesi, appeals from the judgment dismissing all of the claims asserted by him against all of the defendants. Because we conclude that plaintiff's complaint asserted proper claims under state law against certain of the defendants and that the court abused its discretion in refusing plaintiff's request to amend his complaint to assert federal claims under 42 U.S.C. §§ 1983 and 1988 (1982) against some of them, we affirm in part and reverse in part.

Plaintiff's *pro se* complaint alleged that two series of Colorado taxing statutes, one enacted in 1987 and the other in 1988, were constitutionally infirm. While the allegations of this complaint were voluminous and, in large part, irrelevant, a review of the legislative history attendant to these two legislative enactments makes this pleading's essential legal theories self evident.

In 1982, the People of the State of Colorado adopted a comprehensive amendment to Colo. Const. art. X, § 3 (*see* 1989 Cum. Supp. to 1980 Repl.Vol. 1A, C.R.S.). As pertinent here, that amendment required all residential real property to be assessed for ad valorem taxation purposes at 21% of its actual value. However, that amendment also provided that, commencing January 1, 1985, the General Assembly should determine what the then ratio was between the total evaluation for assessment purposes of all residential property in the state and the total evaluation for assessment purposes of all real property. The General Assembly is required, thereafter, annually to make any necessary adjustments in the residential assessments to assure that the total amount of residential assessments will continue to constitute that same percentage of the total amount of all realty assessments.

In 1987, the General Assembly adopted a statute, Colo.Sess.Laws 1987, ch. 284 at 1384 (the 1987 statute), that assessed all residential property in the state at 18% of its actual value. Plaintiff alleges that this percentage was adopted in spite of the fact that, in order to maintain the evaluation ratio in effect on January 1, 1985, the evaluation for assessment purposes of residential property should have been only 16% of its actual value for the 1987 tax year.

In 1988, the General Assembly adopted another statute, Colo.Sess.Laws 1988, ch. 268, § 39–1–104.2(2) at 1276–1277, which declared that the 1987 statute had "produced a deviation from the intent of section 3 of article X of the state constitution." That statute, § 39–1–104.2(3), C.R.S. (1989 Cum.Supp.), provided that for the 1988 tax year, the assessment for tax purposes for residential property should be established at 16% of the property's actual value.

In this same 1988 legislative session, amendments were made to § 39–5–122, C.R.S. (1989 Cum.Supp.), which allows a taxpayer to protest an assessment made by a county assessor through administrative proceedings, and § 39–10–114, C.R.S. (1988 Cum.Supp.), which creates an administrative abatement procedure for the refund of taxes that have been erroneously or illegally collected. Colo.Sess.Laws 1988, ch. 268 at 1287 and 1290 (the 1988 amendments). In the instance of each of these two statutory procedures, it was provided that they were *not* to be applicable to protests or requests for rebate that were based upon:

"The change or adjustment of any ratio of valuation for assessment for residential real property pursuant to the provisions of section 39–1–104.2...." Section 39–5–122(2), C.R.S. (1989 Cum. Supp.). *See* § 39–10–114(1)(a)(I)(C), C.R.S. (1989 Cum.Supp.).

Plaintiff asserts that, because the 1987 statute caused the residential property owned by him to be assessed at 18%, rather than at 16%, of its actual value, he paid some $184 more in ad valorem real estate taxes than he was required to pay under the state constitution. He therefore filed his *pro se* complaint, which named three categories of defendants.

One category of defendants consists of the state itself, the governor, the attorney general, and the state property tax administrator. Another category includes the General Assembly, the president of the state senate, the speaker of the state house of representatives, a state senator, and a state representative. The final category consists of the members of the El Paso Board of County Commissioners, the coun-

ty attorney, the county assessor, and the county treasurer. All individual defendants were joined in their official capacities only.

This complaint contained three claims, which were based upon the following two substantive allegations:

1. The 1987 statute assessing residential real estate at 18% of its real value for that year is invalid as being in contravention of Colo. Const. art. X, § 3; and

2. The 1988 amendments violate the due process and equal protection provisions of the state and federal constitutions.

Plaintiff's prayer requested that the court declare the 1987 statute invalid, provide a reasonable time for an amendment to the 1988 amendments so as to authorize an administrative refund and abatement procedure, award him $184.61, plus interest and costs, and grant him other appropriate relief.

All of the defendants filed motions to dismiss under C.R.C.P. 12(b), none of which were accompanied by affidavits or other evidentiary materials. The trial court granted all of these motions on varying grounds.

The claims against the General Assembly, the president of the senate, the speaker of the house, the state senator, and the state representative were dismissed because of the immunity granted by the state's "speech or debate" clause. Colo. Const. art. V, § 16. The court dismissed the claims against the state, the governor, the attorney general, and the property tax administrator because (1) plaintiff did not exhaust his administrative remedies; (2) none of the statutes violated the equal protection or due process clauses; and (3) plaintiff had not specifically pleaded a claim under 42 U.S.C. § 1983 (1982). The claims against the various county officials were dismissed because of plaintiffs' failure to exhaust administrative remedies and because these defendants had no involvement in adopting the tax statutes at issue.

## I. The "Speech or Debate" Provisions of the Colorado Constitution.

### A.

We agree that the trial court properly dismissed all claims asserted against the defendants Strickland, Bledsoe, Schauer, and Allard, who were sued in their official capacities as members and officers of the General Assembly. Plaintiff's complaint about these defendants appears to be that they allegedly violated their oaths of office as legislators by being a part of the legislative body that adopted unconstitutional statutes. Thus, he seeks to have the judiciary order these defendants to correct the alleged error of their ways by amending the pertinent statutes to make them constitutional. We must decline to do so.

Colo. Const. art. V, § 16, provides, in part, that:

"The members of the general assembly ... for any speech or debate in either house, or any committees thereof ... shall not be questioned in any other place."

While there have been no previous court decisions that have interpreted this provision, the substantially identical provision to be found in U.S. Const. art. I, § 6, has been interpreted broadly and liberally. Such an interpretation has been deemed to be required so as to fulfill that provision's purposes of protecting individual members of Congress from being intimidated by the executive branch and from being obligated to appear before a possibly hostile judiciary, and as a means of enforcing the separation of powers doctrine. *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975). *See generally* Annot., *Construction & Application of Speech or Debate Clause of United States Constitution (Art. I, § 6, cl. 1)—Supreme Court Cases*, 60 L.Ed.2d 1166 (1980). Hence, the federal provision has been viewed as providing an absolute immunity to members of the national legislature for *all* legislative actions; the clause's immunity is not literally limited simply to matters of "speech or debate."

*United States v. Johnson*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966).

And, state legislators generally enjoy a similar privilege, either by reason of a similar state constitutional provision or as a matter of the common law. *See Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). *But see United States v. Gillock*, 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980) (state privilege will not be recognized in federal courts for criminal prosecution under federal statutes).

Given the substantial identity of language between the federal and state provisions, we are convinced that the purposes and policies underlying each are the same. And, those purposes and policies require that the state provision, like the federal provision, be interpreted to provide an absolute immunity for all actions naturally involved in the performance of any legislative functions. *See Holmes v. Farmer*, 475 A.2d 976 (R.I.1984).

Here, plaintiff's complaint is grounded upon the legislators' sponsorship and consideration of, or their vote upon, legislation that pertained to ad valorem taxation. Nothing could involve the legislative function more directly. *See Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986); *Holmes v. Farmer, supra.*

Hence, the individual legislators who were joined as party defendants in this litigation enjoyed an absolute immunity from suit based upon the actions complained of. The trial court properly dismissed any claim that plaintiff attempted to state against them.

### B.

Plaintiff also joined as a party defendant the Colorado General Assembly as an entity. We conclude that the trial court properly dismissed the claim against that institution.

We do not decide whether the speech or debate provision of the Colorado Constitu-

tion applies to all of the members of the General Assembly, as an institution, because there is even a more fundamental reason why the relief requested against it cannot be granted. Quite aside from any question of immunity, while the judicial power extends to determining that legislative enactments violate constitutional requirements, a basic appreciation of the appropriate separation of governmental powers established by Colo. Const. art. III prohibits the courts from ordering the legislative branch either to adopt, or not to adopt, specific legislation. *See Serrano v. Priest,* 18 Cal.3d 728, 135 Cal.Rptr. 345, 557 P.2d 929 (1976) (based on comparable California constitutional provision). Thus, plaintiff's complaint stated no proper claim against the General Assembly that is cognizable by the courts of this state.

## II. *Plaintiff's Failure to Exhaust Administrative Remedies.*

The trial court dismissed all of plaintiff's claims because of its view that he had failed to exhaust those administrative remedies that were available to him. We are convinced, however, that there were no administrative procedures that could be pursued by him.

Plaintiff's complaint alleged that he had attempted to obtain a rebate of his alleged overpayment · of taxes under § 39–10–114(1)(a), C.R.S. (1989 Cum.Supp.), but that the El Paso Board of County Commissioners had denied his request, ruling that the 1988 amendments prohibited a rebate based upon an improper adjustment of assessments under Colo. Const. art. X, § 3. However, he admitted that he did not appeal this decision to the state board of assessment appeals.

In addition, during the course of oral argument in the trial court, it was stated that, in previous protest proceedings under § 39–5–122, C.R.S. (1989 Cum.Supp.), plaintiff had appeared before the board of assessment appeals, protested his 1987 assessment on *other* grounds, and was granted partial relief by that board. However, while he made some reference to the assessment adjustment mandated by the 1987 statute, that board did not pass upon the issue, and he failed to appeal the board's decision to the district court.

Based on these "facts" (and none of the defendants submitted any part of the record of either administrative agency's hearing to the trial court), the trial court held that plaintiff had failed to exhaust his administrative remedies by failing to appeal the county's rebate denial to the state board of assessment appeals and by failing to seek judicial review of the board of assessment's decision on his previous protest. This was, in our view, an erroneous conclusion.

■ No person can be charged with failing to exhaust administrative remedies unless it can be demonstrated that the subject of the dispute falls within the jurisdiction of an appropriate administrative agency. *See Gramiger v. Crowley,* 660 P.2d 1279 (Colo.1983) (because landowner's application was for grading and excavation and not for a "building permit," no administrative remedies were available to rectify denial of that application). And, we conclude that there were no administrative remedies available to plaintiff in this case.

■ A taxpayer who asserts that his realty has been subjected to an illegal assessment generally has two separate means of obtaining an administrative review of the assessment decision.

First, he may directly challenge the assessment by protesting to the local board of equalization under § 39–5–122. In addition, he may seek a rebate of any taxes resulting from the illegal assessment from the board of county commissioners under § 39–10–114, even though he did not previously exhaust the protest procedures. *Board of Assessment Appeals v. Benbrook,* 735 P.2d 860 (Colo.1987). In either case, the taxpayer may appeal the decision of the local board to the board of assessment appeals. Section 39–2–125(1)(c) and (f), C.R.S. (1982 Repl.Vol. 16B).

The 1988 amendments prohibiting a taxpayer's use of either the protest or the rebate procedures based upon an alleged improper adjustment of assessment ratios

became effective on May 23, 1988. *See* Colo.Sess.Laws 1988, ch. 268, §§ 29 and 32 at 1294–1295. Thus, the 1988 amendments which plaintiff attacks in this litigation prohibited his use of the very administrative procedures that the trial court determined plaintiff had failed to exhaust!

■ Further, because none of the defendants placed the record of any hearing before the board of assessment appeals into the record, we cannot now determine the pertinent chronology of that hearing. Plaintiff claims, however, that, because of the 1988 amendments, he did not appeal his 1987 assessment to that board based on the claimed invalidity of the 1987 statute; he says that he relied upon wholly different grounds in processing that appeal. We conclude that neither the local board of equalization, the board of county commissioners, nor the board of assessment appeals would have had any jurisdiction or authority to pass upon the constitutional issues raised by plaintiff, even in the absence of the 1988 amendments.

Although there may be occasions when the record of an administrative hearing may provide a sufficient factual basis to allow a *court* to pass upon the constitutionality of a statute, based on the facts within that record, *see Industrial Commission v. Board of County Commissioners*, 690 P.2d 839 (Colo.1984), an administrative agency itself has no jurisdiction to pass upon a claim that a statute which it administers is unconstitutional. *Kinterknecht v. Industrial Commission*, 175 Colo. 60, 485 P.2d 721 (1971). Rather, such an issue must be raised before the district court in a declaratory judgment action. *Stevenson v. Industrial Commission*, 190 Colo. 234, 545 P.2d 712 (1976).

■ Thus, if a statute or regulation is attacked as unconstitutional, a party need not exhaust any administrative remedies before instituting a court action. *See Collopy v. Wildlife Commission*, 625 P.2d 994 (Colo.1981); *Colorado–Ute Electric Ass'n, Inc. v. Air Pollution Control Commission*, 648 P.2d 150 (Colo.App.1981), *vacated on other grounds*, 672 P.2d 993 (Colo. 1983).

Here, the only issues raised by plaintiff in his complaint are constitutional issues relating to the validity of the assessment statutes. Thus, he was not required to submit these issues either to the county agencies or to the state board of assessment appeals before proceeding with this litigation.

### III. *The State Claims*

■ In any appeal from a final judgment of a district court, this court lacks jurisdiction to determine the facial validity of any statute. Section 13–4–102(1)(b), C.R.S. (1987 Repl.Vol. 6A). And, this opinion should not be construed as making any final determination upon any such issue. Nevertheless, in order to determine whether plaintiff has *pleaded* a proper claim, we must determine whether his stated claims of constitutional violations are at least arguably meritorious. *See Ex parte Poresky*, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); *Denver Union Stockyard Co. v. United States*, 21 F.Supp. 83 (D.Colo.1937), *aff'd*, 304 U.S. 470, 58 S.Ct. 990, 82 L.Ed. 1469 (1938). We conclude that they are.

### A.

■ Plaintiff asserts that the 1987 statute requiring residential real estate to be assessed at 18% of its actual value is invalid because a proper application of Colo. Const. art. X, § 3, would result in a 1987 assessment equal to 16% of actual value. He also asserts that, because of this difference in the evaluations used for tax levy purposes, he paid some $184 more in ad valorem taxes than he otherwise would have been required to pay.

As we have noted, the General Assembly has itself declared that this 1987 statute resulted in a "deviation from the intent" of the pertinent constitutional provision. Section 39–1–104.2(2), C.R.S. (1989 Cum.Supp.). Under these circumstances, we conclude that plaintiff properly pleaded a claim that the 1987 statute violated the Colorado Constitution.

## B.

██ We also conclude that plaintiff has properly pleaded that the 1988 amendments violate the equal protection and due process provisions of both the federal and state constitutions.

In this respect, the trial court apparently concluded that plaintiff's equal protection claims were based upon the difference in the evaluations of residential properties for the 1987 and 1988 tax years. However, we do not read the allegations of plaintiff's complaint as raising this issue. Rather, he refers to the difference in administrative procedures created by the 1988 amendments to which the trial court did not refer and whose validity was not passed upon by that court. ·

In asserting that the 1988 amendments resulted in equal protection and due process violations, plaintiff notes that, prior to these amendments in 1988, both the protest statute, § 39–5–122, and the rebate statute, § 39–10–114, authorized a taxpayer to invoke whichever administrative procedure was appropriate in order to obtain relief from an alleged improper or illegal assessment, irrespective of the *basis* for the alleged impropriety. Subject only to certain time limitations, any proper basis for protesting an assessment or requesting a rebate could be considered by the administrative agencies involved. *See Davison v. Board of County Commissioners,* 41 Colo. App. 344, 585 P.2d 315 (1978) (statutory rebate procedures are adequate to allow consideration of claim that contract between county and appraisal firm was *ultra vires* ).

Thus, he says, when the statutes were amended in 1988 to prevent a taxpayer from relying upon an improper assessment adjustment mandated by Colo. Const. art. X, § 3, the effect of those amendments was to create two classes of taxpayers—those whose alleged illegal assessments result from an illegal ratio adjustment and those whose alleged illegal assessments result from any and all other reasons. And, he claims that providing to the second class of taxpayers an administrative remedy for any illegal assessments, while denying that remedy to the first class, constitutes an equal protection violation.

██ A taxation measure may be attacked as being violative of equal protection. *See Friends of Chamber Music v. Denver,* 696 P.2d 309 (Colo.1985) (ordinance levying admissions tax); *District 50 Metropolitan Recreation District v. Burnside,* 167 Colo. 425, 448 P.2d 788 (1968) (statute exempting real property from ad valorem tax in support of district). And, more specifically, the creation of different classes of taxpayers for assessment purposes may constitute a denial of equal protection unless it is demonstrated that a reasonable basis for the difference exists. *See Beverly Bank v. Board of Review,* 117 Ill.App.3d 656, 72 Ill.Dec. 791, 453 N.E.2d 96 (1983).

Here, we do not determine whether there is a reasonable basis for the distinction between the two classes of taxpayers that the 1988 amendments have drawn. Nor do we determine whether plaintiff has suffered damage of such a nature as to allow him to complain of the distinction. Resolution of either of these issues, as well as many others, may require review of considerable factual materials. We do conclude, however, that plaintiff's claim of violation is not so lacking in validity on its face as to allow its dismissal at the pleading stage of the litigation. Thus, the trial court erred by dismissing plaintiff's equal protection claim based on an alleged failure to state a proper claim.

### IV. *42 U.S.C. § 1983 and § 1988 Claims.*

██ Plaintiff also argues that the trial court erred in refusing to allow him to amend his complaint so as to make clear that, in pursuing his claim that the 1988 amendments violated the federal equal protection clause, he was relying upon 42 U.S.C. §§ 1983 and 1988 (1982). We agree.

Plaintiff's complaint asserted that the 1988 amendments violated the federal equal protection clause, and as we note below, he joined several individuals, in their official capacities, who were "persons" under § 1983. However, his complaint did

not make specific reference to either § 1983 or § 1988.

Nevertheless, at least some of the defendants' legal memoranda filed in support of their motions to dismiss assumed that a § 1983 claim was being asserted, and when he appeared before the court for oral argument, plaintiff averred that that was, in fact, his intention. However, the trial court held that, because he had not referred to these federal statutes, his complaint did not state a claim thereunder. And, when plaintiff asked to amend his complaint to make specific reference to them, this request was denied by the trial court without explanation. We conclude that this denial was an abuse of the court's discretion.

It is arguable that, so long as a complaint states a substantive claim for relief that would be cognizable under § 1983, no specific reference to that federal statute is necessary. *Roberts v. Pepersack*, 256 F.Supp. 415 (D.Md.1966), *cert. denied*, 389 U.S. 877, 88 S.Ct. 175, 19 L.Ed.2d 165 (1967). *See Dodge v. Meyer*, 793 P.2d 639 (1990). However, even if we assume that plaintiff's allegations were not sufficient to assert claims under § 1983 and § 1988, both federal law, *Harkless v. Sweeny Independent School District*, 554 F.2d 1353 (5th Cir.1977), *cert. denied*, 434 U.S. 966, 98 S.Ct. 507, 54 L.Ed.2d 452 (1977), and state law, C.R.C.P. 15(a), mandate that leave to amend be given where justice requires. Indeed, if the court dismisses a complaint for failure to state a claim, permission to amend should be given if there is any "possibility" of stating an adequate claim. *Van Schaack v. Phipps*, 38 Colo. App. 140, 558 P.2d 581 (1976). *See Varner v. District Court*, 618 P.2d 1388 (Colo. 1980).

Here, while plaintiff had filed one amended complaint, none of the parties had filed a responsive pleading, and there had been no discovery. Further, an amendment to refer to § 1983 and § 1988 would not have raised any new factual issues or required the joinder of any additional parties. Thus, this record fails to demonstrate that such a pleading amendment would have resulted in undue delay or would have prejudiced any defendant.

Under such circumstances, a trial court abuses its discretion in refusing to allow the complaint to be amended. *See Varner v. District Court, supra.* Upon remand, therefore, plaintiff must be given leave to file an amended complaint that specifically alleges that the present claim of a denial of equal protection and due process of law are being brought under 42 U.S.C. § 1983 and § 1988.

## V. The Proper Parties Defendant.

We have already concluded that the General Assembly and its members were properly dismissed as defendants. In addition, plaintiff has failed to demonstrate that he possesses a valid claim against certain of the other defendants.

Plaintiff's claim alleging the invalidity of the 1987 statute rests solely upon the provisions of the state constitution; he does not attempt to invoke any federal rights for this purpose. Under this claim, he seeks both a judicial declaration that the statute is unconstitutional and a money judgment for the amount of taxes that he allegedly overpaid.

The statute governing declaratory judgment actions, § 13–51–115, C.R.S. (1987 Repl.Vol. 6A), requires the joinder of any person whose interest would be "affected" by the declaration. Although that statute requires the attorney general to be given notice of any action seeking to have a state statute declared invalid, there is no requirement for that state officer to appear in any such action; under the statute, he retains the option of appearing or not.

The attorney general argues that, by joining him as a party defendant in this litigation, plaintiff has deprived him of the option that the statute, at least by implication, provides. Further, he argues that the duties of his office do not impose upon him any responsibilities for administering the statutes relating to assessment of real property. Thus, he says that he is not a party "affected" by this litigation within the meaning of § 13–51–115, and therefore, plaintiff's complaint did not state a proper

claim against him. We agree with this analysis.

However, the state itself has an interest in establishing the validity of any statute adopted by the General Assembly. Thus, without passing upon the question whether the state is an indispensable party to a declaratory judgment action seeking a determination that a state statute is unconstitutional, since such a determination would "affect" the state, we conclude that its joinder as a party defendant in such an action is not improper.

Further, the funds plaintiff seeks to recover were collected by the county treasurer, based upon an assessment made by the county assessor, for the use of the board of county commissioners. For purposes of a declaration that the assessment was based upon an unconstitutional statute, we conclude that these county officials, in their official capacities, would also be "affected" by the court's declaration and ancillary relief. They are, therefore, proper party defendants for plaintiff's state law claim.

However, plaintiff has not demonstrated how the specific duties either of the governor, of the state property tax administrator, or of the county attorney would be affected by any judicial declaration respecting the 1987 statute. We conclude, therefore, that the trial court properly dismissed any state law claim alleged against the governor, the state property tax administrator, and the county attorney.

Plaintiff's prospective federal claims under § 1983 and § 1988 seek only declaratory relief and attorney fees. These claims must, however, be asserted only against "persons" within the meaning of § 1983. The state itself is not such a person. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The county and its officials, in their official capacities, are. *Wigger v. McKee,* — P.2d — (Colo.App. No. 88CA1523, June 7, 1990).

In addition, a state officer may be sued in his official capacity under § 1983 if, as here, a plaintiff seeks only declaratory or injunctive relief and attorney fees and does not seek any damages. *Will v. Michi-*

*gan Dept. of State Police, supra* (fn. 10). The persons sued, however, must be those whose duties include implementation or enforcement of the statute being assailed. *Oten v. Colorado Board of Social Services,* 738 P.2d 37 (Colo.App.1987).

We are satisfied that the county officials, excluding the county attorney, are sufficiently involved in the enforcement of the statutes governing assessments and the administrative remedies for improper assessments as to be proper parties to plaintiff's § 1983 and § 1988 claims. We are likewise satisfied that the state property tax administrator is also such a proper party. *See* § 39–2–101, et seq., C.R.S. (1982 Repl.Vol. 16B).

Contrariwise, we can find no specific responsibility of either the governor or the attorney general with reference to the assessment statutes that would render either of them a proper party to plaintiff's federal claims. Thus, neither the governor nor the attorney general is a proper party for purposes of plaintiff's state law claim, nor a proper "person" under § 1983.

That portion of the trial court's judgment dismissing all claims against the governor, the attorney general, the General Assembly and its members, and the county attorney is affirmed. That portion of the judgment dismissing any claims against the state tax administrator based upon the state constitution is also affirmed. That portion of the judgment dismissing claims against the board of county commissioners, the county treasurer, and the county assessor, under either state or federal law, as well as that portion of the judgment dismissing the state law claim against the state and the claim against the state property tax administrator under 42 U.S.C. § 1983 or § 1988, is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views and directions contained herein.

DAVIDSON and DUBOFSKY, JJ., concur.