ANTILLES INDUSTRIES, INC., Appellee

v.

GOVERNMENT OF THE VIRGIN ISLANDS: MELVIN H. EVANS, Governor of the Virgin Islands; STANLEY FARRELLY, Chairman of the Virgin Islands Industrial Incentive Board, and REUBEN B. WHEATLEY, Commissioner of Finance, Appellants

No. 75-1176

No. 75-1458

United States Court of Appeals

Third Circuit

Argued December 1, 1975

Filed January 27, 1976

DONALD M. BOUTON, ESQ., Assistant Attorney General, St. Thomas, V.I., *for appellant*

THOMAS ALKON, ESQ. (ISHERWOOD, COLIANNI, ALKON & BARNARD), Christiansted, St. Croix, V.I., *for appellee*

Before ALDISERT, WEIS and GARTH, *Circuit Judges*

OPINION OF THE COURT

WEIS, *Circuit Judge*

The payment of taxes is one of the expected responsibilities of citizenship. In order to preserve a resigned, if not a cheerful, acceptance of that burden, policy dictates that any waiver of the obligation by statute be not extended beyond that expressly allowed. Accordingly, in this appeal, we construe the terms of tax exemption legislation to say no more than the wording requires. Since the enactment did not speak to a right of assignment, we find none existed and vacate the district court judgment which held otherwise.

In an effort to encourage new business activity in the territory, the Virgin Islands Legislature enacted the Industrial Incentive Act of 1957, Act 224, which offered tax exemptions and subsidies to qualified enterprises. The Delaware Watch Company was granted such an exemption on December 7, 1961, effective as of December 16, 1960 and valid for a period of ten years thereafter. As a result, the company was not required to pay excise or gross receipts taxes and it received non-taxable subsidies equal to 75% of the income taxes and 100% of the import duties which it paid into the Treasury of the Virgin Islands. Shortly afterward, Delaware encountered financial difficulties. In June, 1962, it informed the Governor that it was ceasing business, but hoped to resume operations at some time in the future. Although the company continued to file annual reports, it did not resume its manufacturing activities.

Plaintiff Antilles Industries, Inc., a wholly-owned subsidiary of General Time, Inc., began to manufacture watches on St. Croix in 1961. On November 6, 1963 it applied for a

tax exemption but a decision on its request, as well as on those of eleven other watchmaking companies,[1] was deferred. Fearing that an influx of timepieces to the United States would imperil import policies favorable to Island industry, the Governor applied a "freeze" on further exemptions for watchmaking concerns.

Antilles then arranged to secure an assignment of Delaware's exemption. On March 26, 1965, pursuant to the Act of 1961, 33 V.I.C. § 4106,[2] Antilles petitioned the Tax Incentive Board for a transfer of Delaware's certificate. On April 6, 1965, Delaware executed a "general assignment and bill of sale" which purported to sell all of its "business and properties (other than its cash)" to Antilles for a consideration of $28,700.00. Nothing in the record suggests whether Delaware had anything to transfer other than its certificate.[3]

On August 5, 1965, Antilles withdrew its request for transfer of the Delaware certificate, but on September 27, 1968, resubmitted its petition.[4] On May 7, 1969, the Board

[1] Before that time, a total of 5 exemptions, including Delaware's, had been issued.

[2] The Act of November 3, 1961, No. 798, became effective on January 1, 1962. It repealed Act 224, but provided that no tax exemptions granted under that statute would be affected. However, there was to be no enlargement or expansion of the pre-existing exemptions.

A continuing source of confusion throughout these proceedings was the failure of both Antilles and the Government to recognize that the Delaware exemption had been issued under the terms of the 1957 legislation, Act 224. The provision codified at 33 V.I.C. § 4106, which allowed transfer of an exemption by the Tax Incentive Board, was part of the 1961 Act and did not appear in the 1957 enactment. Consequently, the provision for transfer did not apply to the Delaware certificate. See Vitex Manufacturing Co. v. Government of Virgin Islands, 351 F.2d 313, 316 n. 4 (3d Cir. 1965).

[3] The balance sheet of Delaware as of December, 1962 showed a merchandise inventory of $545.00. The only other assets listed were $364.00 cash in bank, loans receivable of $14,800.00, and an industry subsidy receivable of $1,878.24. A profit and loss statement for the same year included as other income the sale of fixed assets, $15,850.00. On the record in this case it is difficult to escape the conclusion that in fact nothing other than the exemption certificate was sold to Antilles in 1965.

[4] In a letter requesting resubmission, Antilles stated that one of the considerations for the withdrawal of its petition in August, 1965 was the decision of the district court of the Virgin Islands in Virgo Corporation v. Paiewonsky, 251 F.Supp. 279 (D.V.I. 1966). Had the holding in that case

held a hearing to determine if the Delaware certificate should be revoked. The record does not reveal whether such an order was in fact issued. On July 22, 1970, the Board wrote to the Governor stating that there was "no outstanding or active business [of Delaware] on which to predicate a transfer notwithstanding the eligibility of the applicant [Antilles]." The Governor agreed with the Board and denied Antilles' application.

Plaintiff then filed suit in the district court. Following the submission of an agreed statement of facts, the district court decided that (1) the exemptions were assignable; (2) Antilles was the lawful assignee of Delaware's exemption as of April 6, 1965; and (3) it was entitled to a refund of taxes paid thereafter. In a subsequent proceeding, the court entered a judgment fixing the amount of the refunds at $2,232,286.38 plus interest and awarding counsel fees.

The issue on appeal is simply whether an exemption granted under the 1957 Act is assignable. The district court, recognizing that the statute was silent on that point, held that such exemptions were transferable. It reasoned that since under the Act an exemption was "in the nature of a contract," traditional contract principles permitting assignment should govern. We disagree with that analysis because it did not utilize the proper standards for interpreting tax exemption legislation.

"In the interpretation of statutes, the function of the court is easily stated. It is to construe the language so as to give effect to the intent of [the legislature]." United States v. American Trucking Ass'ns, 310 U.S. 534, 542 (1940) (footnote omitted). On several occasions, we have stated

remained in effect, Antilles would have been entitled to the exemption in its own right (under its 1963 request). The judgment in Virgo, however, was reversed by this court in the following year, 384 F.2d 569 (3d Cir. 1967).

Since the opinion of the district court in the Virgo case was dated March 14, 1966, it appears likely that the filing of the suit rather than that decision, furnished the impetus for Antilles' action in August, 1965.

the basic rule of construction which is to be applied in claims of tax exemption. In King Christian Enterprises, Inc. v. Government of the Virgin Islands, 345 F.2d 633 (3d Cir. 1965), Judge Maris wrote:

"It is a well settled rule that statutory exemptions from taxation, being a matter of grace, are to be strictly and narrowly construed." (Citations omitted) 345 F.2d at 637.

In Tracey Leigh Development Corp. v. Government of the Virgin Islands, 501 F.2d 439, 443 (3d Cir. 1974), Judge Adams repeated that language with approval, and added:

"This rule, when compounded with the precept that 'to supply [statutory] omissions transcends the judicial function,' makes the present case—a case involving a tax exemption—a particularly inappropriate occasion for judicial tampering with the clear language of a statute." (Footnote omitted).[5]

■ Viewed in the light of the correct rule of construction, therefore, the absence of any reference to assignability takes on particular significance in ascertaining the intent of the legislature. In the context of tax exemptions, silence implies not permission, but a denial of authorization. We do not find in the Act a legislative intention to include a right of transfer. Historically in the Virgin Islands, such permission has been articulated. For example, the predecessor legislation, Bill 293 (1954) of the Municipal Council of St. Thomas and St. John, provided at § 3(e):

"In the event of sale, transfer or assignment of any tax exempt or subsidized business or industry hereunder, the exemption or subsidy granted shall not be extended beyond the period originally authorized."

---

[5] Our opinion in Vitex Manufacturing Co. v. Government of the Virgin Islands, supra, is distinguishable. While there the language in the exemption legislation was construed against the drafter in accordance with the contractual rule, the statute contained verbiage which was pertinent. Here, there is a total lack of any wording in the statute on the crucial issue and, hence, no language to construe.

By implication then, exemptions granted under that Act could be assigned—at least in connection with the transfer of the business to which it had been granted.

Act 798, 33 V.I.C. § 4106, the 1961 statute which succeeded Act 224, contained a provision for limited transferability after approval by a governmental board.

Thus, both before and after Act 224 transferability was expressed in statutory terms. The legislature has demonstrated that, when it chose to permit transferability, it knew how to do so. In these circumstances there is no principle of logic commanding the conclusion that, by absolute silence on the subject of transferability, the legislature meant to include it. Indeed the contrary conclusion is compelling, to-wit, that the legislature did not wish to provide transferability of Act 224 exemptions. See Vitex v. Government of the Virgin Islands, supra.

It may be argued that the Act of 1961, in allowing a qualified right of transfer, was meant to narrow a much wider privilege implied in the 1957 legislation. But it is far more consistent to adopt the contrary view and to regard the 1961 provisions as a step toward liberalizing the negative feature of the earlier enactment.

Antilles contends that, since the statute refers to an exemption as being "in the nature of a contract" and generally contracts are assignable, therefore an exemption is transferable. We do not accept the proposition that a tax exemption is an ordinary contract, and, examined in context, the statutory language is not to the contrary.

The Act was intended to entice new business to the Islands with the promise of favorable tax treatment. To assure prospective entrepreneurs that there would be no change in the rules of the game after the initial investments, the legislature provided that:

"(e) In order that the encouragement tendered by this Act in the form of subsidies for the promotion of the business and industrial

development of the Islands may be an incentive, having a real and unmistakably sure basis, the Government of the Virgin Islands hereby declares that it considers all orders granting subsidies and tax exemptions made available under the provisions of this Act as being in the nature of a contract or agreement between the Government of the Virgin Islands and the persons or corporations receiving the benefit of the subsidies or tax exemptions, and that it will not adopt any legislation which may impair or limit such subsidies or tax exemptions granted hereunder or which may defeat the purpose of this Act." Act 224.

The statute thus establishes an arrangement which would not allow impairment of benefits once conferred to be diminished by legislative after-thought—a desirable protection for a prospective investor. But it does not follow that he is free to pass on to others what has been granted to him.

The personal nature of a tax exemption has been discussed by the Supreme Court in terms still appropriate today although the opinions were handed down many years ago. In Picard v. East Tennessee, Virginia & Georgia Railroad Co., 130 U.S. 637, 641 (1889), the Court said:

"Yielding to the doctrine that immunity from taxation may be granted, that point being already adjudged, it must be considered as a personal privilege not extending beyond the immediate grantee, unless otherwise so declared in expressed terms. The same considerations which call for clear and unambiguous language to justify the conclusion that immunity from taxation has been granted in any instance must require similar distinctness of expression before the immunity will be extended to others than the original grantee."

Rochester Railway Co. v. City of Rochester, 205 U.S. 236, 247 (1907), further explained:

"This court has frequently had occasion to decide whether an immunity from the exercise of governmental power which has been granted by contract to one, has by legislative authority been vested in or transferred to another, and in the decisions certain general principles, which control the determination of the case at bar, have been established. Although the obligations of such a contract are

protected by the Federal Constitution from impairment by the State, the contract itself is not property which, as such, can be transferred by the owner to another, because, being personal to him with whom it was made, it is incapable of assignment. The person with whom the contract is made by the State may continue to enjoy its benefits unmolested as long as he chooses, but there his rights end, and he cannot by any form of conveyance transmit the contract or its benefits, to a successor." (Citation omitted.)

Later, the Court recited this language with approval in Morris Canal and Banking Co. v. Baird, 239 U.S. 126, 131 (1915). See also 173 A.L.R. § 118 (1948).

■ In substance then, the Supreme Court cases establish that a tax exemption is personal to the entity to which it was granted, and unless the legislation so provides, the privilege may not be assigned to another.[6] That being so, the district court erred in applying the usual principles of contract law favoring assignability.

Because we have found no right of assignability under Act 224, we need not address the question of irregularities during the administrative proceedings concerning the transfer. The 1961 Act did not affect the exemptions granted under the 1957 legislation. Consequently, Antilles' petition for transfer and the Government's actions thereafter were nullities.

The judgment of the district court will be vacated, and we will enter judgment for the defendants.

---

[6] The district court in indicating that "[t]he general law of assignments" required "that in the absence of language prohibiting assignments, claims against the Government are freely assignable" relied upon Webster v. Luther, 163 U.S. 331, 341 (1896). That case involved the pre-entry assignment of lands granted to a Civil War veteran's widow under a special homestead act. The unique nature of a tax exemption distinguishes the case at bar and we find the district court's reliance on Webster was misplaced.