**GOVERNMENT OF THE VIRGIN ISLANDS and CYRIL E. KING, GOVERNOR OF THE VIRGIN ISLANDS**

v.

**ELEVENTH LEGISLATURE OF THE VIRGIN ISLANDS and SENATOR AND PRESIDENT OF THE LEGISLATURE ELMO D. ROEBUCK, SENATOR AND VICE PRESIDENT OF THE LEGISLATURE BRITAIN H. BRYANT, SENATOR AND LEGIS- LATIVE SECRETARY ERIC E. DAWSON, SENATOR HECTOR L. CINTRON, SENATOR OTIS L. FELIX, SENATOR ROGER C. HILL, SENATOR FRITZ E. LAWAETZ, SENATOR JOHN L. MADURO, SENATOR CLAUDE A. MOLLOY, SENATOR AND CHAIRMAN OF THE FINANCE COMMITTEE EARLE B. OTTLEY, SENATOR JEAN A. ROMNEY, SENATOR NOBEL B. SAMUEL, SENATOR LLOYD L. WIILLIAMS and EXECUTIVE SECRETARY PATRICK N. WILLIAMS, Appellants**

No. 75-2163

United States Court of Appeals

Third Circuit

Argued April 28, 1976

Filed June 3, 1976

ALFRED L. SCANLAN, ESQ. (SHEA & GARDNER), Washington, D.C., *for appellant*

VERNE A. HODGE, ESQ., Attorney General of the Virgin Islands, Department of Law, Charlotte Amalie, St. Thomas, V.I., *for appellee*

Before VAN DUSEN, ADAMS and ROSENN, *Circuit Judges*

OPINION OF THE COURT

VAN DUSEN, *Circuit Judge*

This case presents for resolution a dispute between the Governor of the Virgin Islands and the Eleventh Legislature of the Virgin Islands over the nature and extent of the Governor's veto power. We affirm the district court's declaratory judgment in favor of the Governor.

Near the end of June 1975, the Legislature adopted three appropriations bills,[1] each bill containing several items of

---

[1] Bills Nos. 6762, 6764 and 6765.

appropriation. These bills were duly presented to the Governor on June 30 and were signed by him on July 7 and 8. However, as authorized by § 9(d) of the 1954 Revised Organic Act of the Virgin Islands, 48 U.S.C. § 1575(d), the Governor appended to the bills at the time of signing them a statement of the items or parts or portions of the bills to which he objected. Section 9(d) provides that "the items, or parts or portions thereof, so objected to shall not take effect." This power exercised by the Governor is commonly referred to as an item veto.[2] On July 14, the Legislature reconsidered the items or portions objected to by the Governor and reapproved them by more than a two-thirds margin. The Legislature then sent a message to the Governor, stating that it had overridden his appended objections pursuant to § 9(d).

On July 28, 1975, the Attorney General of the Virgin Islands filed in the district court, on behalf of the Government of the Virgin Islands and the Governor, a two-count complaint against the Legislature, thirteen legislators and the Executive Secretary of the Legislature. The first count sought injunctive relief and a declaration that the Legislature's purported override of the Governor's veto of the items objected to by him was without force or effect. The second count dealt with a wholly distinct matter—whether an act, passed by the Legislature over the Governor's veto pursuant to its recognized authority, impermissibly interferes with executive powers. In its answer, the Legislature denied the material allegations in each of the two counts of the complaint. Also the answer challenged the

---

[2] Section 9(d) gives the Governor two other types of veto power as well. If the legislature adjourns within 10 days after presenting the Governor with a bill, and he does not sign the bill nor return it to the legislature prior to its adjournment, the bill "shall not be a law." This type of veto is called a "pocket veto." For the Governor to exercise a "return veto," he must return the bill to the legislature with a statement of his objections. This veto can be overriden by a two-thirds vote of the legislature, which is unicameral.

manner in which the Governor used his item veto power and sought a declaratory judgment that a proposal by the Governor to impound funds appropriated by and to the Legislature would be illegal.

The plaintiffs' first cause of action was heard on August 4, 1975, and on that day the district court delivered an oral ruling, holding that § 9(d) did not authorize the Legislature to override the item objections of the Governor which are appended to an approved appropriation bill. The district court entered an order[2a] to that effect on August 7, in which it determined that there is no just cause for delay and expressly directed that final judgment be entered on its decision determining the issue raised by count I of the complaint. Under F. R. Civ. P. 54(b) and 27 U.S.C. § 1291, we have jurisdiction on appeal of the August 7 order. We do not have jurisdiction of, and we do not discuss, any of the other issues raised by the parties to this appeal.

## I. *Standing*

Before proceeding to the merits of the issue before us, we address the question of the plaintiffs' standing. In Coleman v. Miller, 307 U.S. 433 (1939), the Supreme Court held that it had jurisdiction to review a claim by 20 state senators that the tie-breaking vote cast by the state's Lieutenant Governor did not constitute an effective approval of an amendment to the Federal Constitution by that state legislature.

"Here, the plaintiffs include twenty senators, whose votes against ratification have been overridden and virtually held for naught although if they are right in their contentions their votes would

---

[2a] This order provided, inter alia, that ". . . under the provisions of Section 9(d) of the Revised Organic Act of 1954, as amended, the Legislature of the Virgin Islands has no power to override the objections of the Governor which are appended to an approved appropriation bill containing several items of appropriations of money."

have been sufficient to defeat ratification. We think these senators have a plain, direct and adequate interest in maintaining the effectiveness of their votes."

307 U.S. at 438. In the instant case, the Governor's stake in this litigation is identical with the stake of the 20 senators in Coleman. We conclude that the Governor has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination. . . ." Baker v. Carr, 369 U.S. 186, 204 (1962).[3]

In its answer, the Legislature asserted that the Government of the Virgin Islands was improperly named as a party plaintiff. Since this question was not pressed on appeal of the August 7 order, and since we are convinced that the Governor himself has standing and that, therefore, there is a case or controversy, we need not decide the propriety of naming the Government of the Virgin Islands as a party plaintiff in such a case.

## II. *Merits*

Section 9(d) of the Revised Organic Act provides:

"(d) Every bill passed by the legislature shall, before it becomes a law, be presented to the Governor. If the Governor approves the bill, he shall sign it. If the Governor disapproves the bill, he shall, except as hereinafter provided, return it, with his objections, to the legislature within ten days (Sundays excepted) after it shall have been presented to him. If the Governor does not return the bill within such period, it shall be a law in like manner as if he had signed it, unless the legislature by adjournment prevents its return,

---

[3] See Kennedy v. Sampson, 511 F.2d 430, 433–36 (D.C. Cir. 1974). Another threshold issue is whether this controversy presents a nonjusticiable political question. We conclude that it does not. See Powell v. McCormack, 395 U.S. 486, 516–21 (1969); Baker v. Carr, 369 U.S. 186, 208–37 (1962). For instances where courts have considered the veto provisions of the United States Constitution, see Wright v. United States, 302 U.S. 583 (1938); The Pocket Veto Case, 279 U.S. 655 (1929); Kennedy v. Sampson, supra. We note that the District Court of the Virgin Islands is an Article I court.

in which case it shall be a law if signed by the Governor within thirty days after it shall have been presented to him; otherwise it shall not be a law. When a bill is returned by the Governor to the legislature with his objections, the legislature shall enter his objections at large on its journal and, upon motion of a member of the legislature, proceed to reconsider the bill. If, after such reconsideration, two-thirds of all the members of the legislature pass the bill, it shall be a law. If any bill presented to the Governor contains several items of appropriation of money, he may object to one or more of such items, or any part or parts, portion or portions thereof, while approving the other items, parts, or portions of the bill. In such a case he shall append to the bill, at the time of signing it, a statement of the items, or parts or portions thereof, to which he objects, and the items, or parts or portions thereof, so objected to shall not take effect."

██ The Governor contends that the language of § 9(d) is clear, that it states that items objected to by the Governor "shall not take effect," and that it does not provide for legislative override of an item veto. The Legislature contends that the section, when read in its entirety, clearly contemplates legislative override of an item veto. The Legislature finds support for its reading in a comparison of the language describing the consequence of a pocket veto ("shall not be a law") and that describing the consequence of an item veto ("shall not take effect"). Moreover, it contends that the structure of the section requires reference to the procedures set out in the entire section, including the procedure for legislative override of a return veto, when determining the nature of the item veto power.[4]

 We agree with the Governor that § 9(d) does not provide for legislative override of an item veto. The

---

[4] This contention seems to be based largely on the assumption that without appending to the item veto procedures the other procedures set forth in the rest of the section, the Governor could refuse to sign into law a bill containing several items of appropriation for an indefinite period and that bill would neither become law nor be vetoed. As the plaintiffs pointed out, a bill containing several items of appropriation is still a bill, and therefore this hypothetical situation would clearly be governed by the 10-day rule set forth in the beginning of § 9(d), without any necessity of appending that rule to the item veto portion of the section.

language "shall not take effect" is perhaps not absolutely inconsistent with the existence of a legislative override power, but it certainly is not sufficient to create such a power by its plain meaning. Indeed, the most natural construction of the language has, as the district judge found, the ring of finality. Moreover, the structure of the entire section does not imply a merger of the item veto procedures and the return veto procedures, which include the power of legislative override. Reading the item veto procedures without conjoining procedures set forth with the other forms of veto does not lead to any absurd results.[5]

Section 16 of the 1936 Organic Act,[6] which was superseded by § 9(d) of the 1954 Act, 48 U.S.C. § 1575(d), contained the following language concerning the override of item vetoes of appropriation bills:

"New legislation, and repeals, alterations, and amendments of local laws of the Virgin Islands by the municipal council having jurisdiction, and by the legislative assembly, shall be effective and enforced when, and to the extent, such new legislation, repeals, alterations, and amendments are approved by the Governor, and the Governor shall state specifically in each case whether his approval or disapproval is in whole or in part, and if in part only, may veto any specific item or items in any bill which appropriates money for specific purposes, but shall veto other bills, if at all, only as a whole. If any bill passed by the municipal council having jurisdiction or by the legislative assembly be disapproved in whole or in part by the Governor, the Governor shall within thirty calendar days return such bill to the said municipal council or to the legislative assembly,

_____

[5] It is possible that each item of appropriation vetoed by the Governor could be repassed by the Legislature as a separate piece of legislation. This legislation would be subject to a return veto by the Governor but not to an item veto, and therefore such veto would be subject to override. To the Legislature this demonstrates the absurdity of the construction proposed by the Governor. We disagree. It is quite conceivable that Congress wanted each item of appropriation challenged by the Governor to be made to stand or fall on its own merits. Congress could have been concerned that several unwise items of appropriation, each supported by less than two-thirds of the legislators, could be approved by enough votes to override a veto as a result of being included in the same bill. See Bengzon v. Secretary of Justice, 299 U.S. 410, 415 (1937).

[6] Act of June 22, 1936, ch. 699, § 16, 49 Stat. 1810.

whether in actual session or not, setting forth his objections. If after reconsideration by the legislative body having jurisdiction two-thirds of all the members of the said body pass such bill or part thereof, it shall be sent to the Governor who, in case he shall not then approve it, shall transmit the same to the President."

We find it significant, though not necessarily conclusive, that Congress demonstrated by the language of the 1936 Act that it knew how to provide for explicit legislative override authority and that it omitted such language from the 1954 Revised Organic Act. See Antilles Industries, Inc. v. Government of the Virgin Islands, 529 F.2d 605, 608 (3d Cir. 1976). The comparison of the wording of the 1936 and 1954 Acts confirms our conclusion that the plain wording of § 9(d) of the 1954 Act should control on this record.

■ The Legislature contends that even if its interpretation of the words of § 9(d) is not accepted, the legislative history of the section vindicates its position.[7] The Governor too draws support for his construction of the statute from the legislative history. After thoroughly considering all the legislative history relied on by the parties, we conclude that it is ambiguous and that it does not provide adequate grounds for departing from the apparent plain meaning of the language in 48 U.S.C. § 1575(d).[8]

■ The Legislature contends that the American experience in general and the notion of separation of powers in particular militate strongly against interpreting § 9(d) so as to permit an absolute item veto. In the circumstances of

---

[7] It is not improper to refer to legislative history even when a statute appears clear on its face. See Cass v. United States, 417 U.S. 72, 78–79 (1974); United States v. Duncan, 527 F.2d 1278, 1280 (3d Cir. 1975).

[8] We do not find pertinent cases which hold that change in the meaning of a statute after codification and revision should not be inferred, absent very clear indication of congressional intent. Muniz v. Hoffman, 422 U.S. 454, 472–74 (1975), shows that this rule is squarely based on the special circumstances of codifications and revisions. The Revised Organic Act was much more than a mere revision and codification; it was "a new basic charter of government for the territory to take the place of the 'somewhat makeshift' Organic Act of 1936 . . . ." See Virgo Corp. v. Paiewonsky, 384 F.2d 569, 576 (3d Cir. 1967).

this case, we do not find this contention persuasive. The 1936 Organic Act explicitly gave the President of the United States an absolute veto power of bills or portions of bills objected to by the Governor, who was appointed by the President. Law of June 22, 1936, ch. 699, § 16, 49 Stat. 1810. The 1954 Revised Organic Act, as originally enacted, transferred the absolute item veto power to the presidentially appointed Governor, but it otherwise kept with the President the power to absolutely veto. Act of July 22, 1954, ch. 558, § 9(d), 68 Stat. 502. In 1968, the Act was amended to provide for the popular election of the Governor and for the elimination of the President's absolute veto power. Act of August 23, 1968, Pub. L. 90–496, §§ 3, 4, 82 Stat. 837. Thus, as we interpret § 9(d), the 1954 Act merely altered the locus of an absolute veto power from one member of the federal executive branch, the President, to another, the presidentially appointed Governor. It is for Congress to decide whether the continued existence of the Governor's absolute veto power after the changes brought by the 1968 amendment to the Act is an anachronism as contended by defendants.

For the foregoing reasons, the judgment of the district court will be affirmed.