**Roy ROMER, in his official capacity as Governor of the State of Colorado, Petitioner,**

v.

**COLORADO GENERAL ASSEMBLY; Carl "Bev" Bledsoe, in his official capacity as Speaker of the House of Representatives; and Ted Strickland, in his official capacity as President of the Senate, Respondents.**

**No. 90SC36.**

Supreme Court of Colorado, En Banc.

April 15, 1991.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Denver, for petitioner.

Welborn Dufford Brown & Tooley, P.C., Philip G. Dufford, Gregory A. Ruegsegger, Denver, for respondents.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari pursuant to C.A.R. 50 to review an order of the district court dismissing a complaint filed by the Governor of Colorado, the Honorable Roy Romer, against the General Assembly, Carl "Bev" Bledsoe in his official capacity as Speaker of the House of Representatives, and Ted Strickland in his official capacity as President of the Senate. The district court held that the speech or debate clause, Colo. Const. art. V, § 16, granted absolute immunity to members of the General Assembly. We affirm in part and reverse in part.

In April 1989, the Colorado General Assembly enacted the 1989–90 appropriations bill, otherwise known as the "long bill," to provide expenditures for the executive, legislative, and judicial branches of state government. Ch. 1, sec. 1, 1989 Colo.Sess. Laws 1. Besides the normal appropriations, the General Assembly included headnotes and footnotes that sought to restrict or explain the use of the relevant appropriation.

Governor Roy Romer approved the long bill on April 26, 1989, but attached a letter to the General Assembly claiming eight of the headnotes and forty-one of the footnotes violated either the separation of powers clause of the Colorado Constitution, article III, by infringing on the executive function, or the prohibition against substantive legislation included in the long bill. Colo. Const. art. V, § 32. The governor purported to veto those items he contended were unconstitutional by lining them out pursuant to his power to disapprove distinct items in the appropriations bill under article IV, section 12.

Colorado's constitution grants the governor the power to disapprove any distinct item in the long bill, and provides that the legislature can only override that veto by the normal override process of a two-thirds vote in each house, art. IV, § 11. The General Assembly, however, through the president of the Senate and the speaker of the House, sent a letter back to the governor claiming his vetoes were improper and had no legal effect. The General Assembly also stated that the disputed provisions would be treated as duly enacted law until repealed or found unconstitutional by a court of competent jurisdiction.[1]

---

1. The letter, dated May 8, 1989, stated:

   Dear Governor Romer,
   The purpose of this letter is to state our position concerning your action on the 1989–90 long bill, Senate Bill No. 245. Eight headnote provisions and 41 footnotes were lined through and purportedly vetoed without accompanying vetoes of the appropriations to which such headnotes and footnotes pertain. For the reasons which follow, we believe that the attempted veto of these headnotes and footnotes was invalid under the state constitution and had no legal effect.
   According to the Colorado Supreme Court, the veto power can be exercised only when clearly authorized by a specific provision of the constitution, and the language conferring it must be strictly construed. *Colorado General Assembly v. Lamm,* 704 P.2d 1371, 1386 (Colo.1985).
   The only authority in the state constitution for the governor to veto a portion of an appropriation bill is contained in article IV, section 12, which gives the governor the "power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items, ..." An "item," for purposes of article IV, section 12, is an indivisible sum of money dedicated to a stated purpose. *Col-*

   *orado Assembly v. Lamm,* 704 P.2d 1371 (Colo.1985). The headnotes and footnotes lined out in Senate Bill No. 245 are not "items" for purposes of the item veto power. The attempted veto of these provisions was therefore invalid and had no legal effect.
   In the veto message on Senate Bill No. 245, questions are raised about the constitutionality of the headnotes and footnotes in question. Only a court can declare legislative enactments unconstitutional, and there has been no judicial determination that these headnotes and footnotes are unconstitutional. In fact, the headnotes and footnotes must be presumed constitutional, and anyone asserting otherwise must prove unconstitutionality beyond a reasonable doubt. See *Lamm v. Barber,* 192 Colo. 511, 565 P.2d 538 (1977).
   The Colorado Supreme Court has held that the governor has no power, independent of a valid item veto under article IV, section 12, to veto an allegedly unconstitutional provision in an appropriation bill. *Colorado General Assembly v. Lamm,* 704 P.2d at 1385 (Colo. 1985).
   The General Assembly, when faced with an invalid veto of an appropriation bill, is not required to attempt to override the governor's action. *Colorado General Assembly v. Lamm,* at 1377 (Colo.1985). In fact, it would be ano-

On May 25, 1989, the governor instructed the executive departments to ignore the headnotes and footnotes unless he indicated otherwise. On June 21, 1989, the General Assembly sent another letter to Governor Romer restating its position that the vetoes were invalid, and encouraging the governor to either "exercise a valid veto of an entire item of appropriation or seek vindication of your view in the appropriate court." The governor filed this declaratory judgment action in Denver district court on September 1, 1989.

In his complaint, the governor asserted that first, the headnotes and footnotes were unconstitutional; second, the vetoes of those notes were valid; and third, that in ignoring those vetoes, the legislature usurped an executive function, violating separation of powers. The General Assembly moved to dismiss, contending the speech or debate clause in article V, section 16, of the Colorado Constitution afforded it absolute immunity from suit, and that the vetoes were void as a matter of law, so that the governor's complaint failed to state a claim for relief. That motion was granted by the district court in December 1989 based solely on its conclusion that the legislature was absolutely immune from suit. The court did not address whether the vetoes were valid or the provisions unconstitutional. The governor filed a notice of appeal in the court of appeals, and we accepted jurisdiction by certiorari pursuant to C.A.R. 50 (before judgment). We stated the issues as whether the governor could bring an action against the legislature for ignoring the governor's vetoes, and second, whether the speech or debate clause of the Colorado Constitution provided the General Assembly and its members with absolute immunity.

I

■ We have previously addressed whether one branch of government has standing to bring an action against another branch in *Colorado General Assembly v. Lamm*, 700 P.2d 508 (Colo.1985) (*Lamm I*), and *Colorado General Assembly v. Lamm*, 704 P.2d 1371 (Colo.1985) (*Lamm II*). In *Lamm I*, we said "[w]hether a particular plaintiff has standing to invoke the jurisdiction of the courts is a preliminary inquiry designed to ensure that the judicial power is exercised only in the context of a case or controversy." 700 P.2d at 515–16. Whether a plaintiff has standing requires a determination of (1) whether the plaintiff was injured in fact, and (2) whether the injury was to a legally protected right. *Id.* at 516 (quoting *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977)). Injury in fact may be proven by showing that "the action complained of has caused or has threatened to cause injury." *Id.; see also Community Tele–Communications, Inc. v. Heather Corp.*, 677 P.2d 330 (Colo.1984). The injury in fact requirement is a constitutional requirement, since judicial power granted by article VI of the Colorado Constitution may be exercised only if a true controversy exists. *Lamm I*, 700 P.2d at 516. *See Conrad v. City of Denver*, 656 P.2d 662 (Colo.1982). The requirement that the injury be to a legally protected interest "is grounded on prudential considerations of judicial self restraint." *Lamm II*, 704 P.2d at 1377; *see Lamm I*, 700 P.2d at 516.

*Lamm I* held that the General Assembly had standing to bring an action against the governor to challenge a particular construction given certain statutes by the governor resulting in transfers of funds between departments of the executive branch. We said an allegation that the challenged transfers impermissibly infring-

---

malous for the General Assembly to attempt to "override" an action of the Governor that is not a veto, and for the General Assembly to treat the Governor's action as proper vetoes by attempting to "override" them would only confuse the legal status of the Governor's action.

For the foregoing reasons, it is not necessary for the General Assembly to take action

in response to your action on headnotes and footnotes in Senate Bill No. 245. Until the headnotes and footnotes in question are repealed or declared unconstitutional by a court of competent jurisdiction, they should be treated as duly enacted law.

The letter was signed by Ted L. Strickland, President of the Senate, and Carl B. Bledsoe, Speaker of the House of Representatives.

ed on the General Assembly's power of appropriation granted by the constitution satisfied the requirement that an injury in fact had occurred to a legally protected interest. 700 P.2d at 516. *Lamm II* held that the legislature had standing to challenge the constitutional validity of gubernatorial vetoes. 704 P.2d at 1377. We found that an injury in fact had occurred since an improper veto infringed on the legislature's power of appropriation and violated the constitutional requirement of separation of powers between the executive and the legislative branches. *Id.* We rejected the governor's argument that the legislature had no legally protected interest at stake:

> In order to protect its ability to enact legislation by majority vote, it is essential that the legislature be able to obtain a determination whether a purported veto is within the governor's power, and therefore valid, or outside the ambit of that power, and therefore an intrusion upon the legislative domain.

*Id.* at 1378. An invalid veto, permitted to stand unchallenged, "would cause injury in fact to the legislature's legally protected right and power to make appropriations by majority vote." *Id.* In this case, it is the governor who seeks standing to challenge what essentially amounts to an allegedly impermissible legislative override of the governor's veto of items in the long bill.

All appropriations derive from an act passed by both houses of the General Assembly. *See* Colo. Const. art. V, §§ 17, 32, & 33. That act is then sent to the governor, who has the constitutional duty to either approve the act or return it, unapproved and with his objections, to the house in which it originated.[2] *See* Colo. Const. art. IV, § 11. In Colorado, the governor is given the power in article IV, section 12, to veto distinct items in the long bill without having to veto the entire act. Once vetoed, those items may only be reinstated by a valid override or by a judicial declaration that the veto was invalid. Colo. Const. art. IV, § 11; *Colorado General Assembly v.*

*Lamm*, 704 P.2d at 1377–79. In this case, however, the legislature responded to the governor's purported veto by declaring the vetoes invalid and expressly stating that "[u]ntil the headnotes and footnotes in question are repealed or declared unconstitutional by a court of competent jurisdiction, they should be treated as duly enacted law." That letter was published, by order of the General Assembly, in the 1989 sessions law in conjunction with the long bill. Ch. 1, sec. 1, 1989 Colo.Sess.Laws 131–32.

Rather than attempt an override or seek a judicial determination of the validity of the vetoes, the General Assembly simply chose to ignore the governor's action. The injury in fact to a legally protected interest is not in regard to whatever substantive effect the footnotes and headnotes had on the executive's power to administer, but instead relates to the executive's constitutional power and duty to either approve or veto legislative acts.

In *Government of the Virgin Islands v. Eleventh Legislature*, 536 F.2d 34 (3d Cir. 1976), the court of appeals held that the governor had standing to maintain a declaratory judgment action against the legislature to seek a judicial determination of the validity of a legislative override of the governor's item veto. *Id.* at 36. "We conclude that the Governor has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination....'" *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). The court relied on *Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939), which held that twenty state senators could bring an action to challenge the lieutenant governor's tie-breaking vote as invalid. "We think that these senators have a plain, direct and adequate interest in maintaining the effectiveness of their votes." *Id.* at 438, 59 S.Ct. at 975.

---

**2.** The governor may also not return the bill, in which case it becomes law after ten days, unless the General Assembly is adjourned, in which case the governor has thirty days after adjournment to send the bill with his objections to the secretary of state.

In *Bordallo v. Camacho,* 416 F.Supp. 83, 85 (D.Guam 1973), *aff'd,* 520 F.2d 763 (9th Cir.1975), a senator was held to have standing to challenge the governor's pocket veto. "If the defendant's (Governor's) pocket veto in the instant case is illegal then the plaintiff (Bordallo) has suffered a real injury, i.e., the loss of the effectiveness of his vote, and the loss of his opportunity to override the defendant's veto." *Id. See also Dye v. State of Miss.,* 507 So.2d 332, 338 (Miss.1987) (senators have standing to challenge actions of executive branch as "depriving them of power and prerogatives lawfully theirs as Senators"); *State ex rel. Hunt v. North Carolina Reins. Facility,* 49 N.C.App. 206, 213, 271 S.E.2d 302, 305 (1980) (governor had standing to bring declaratory judgment action to seek determination of legality of state reinsurance facility's activity since "the Governor's constitutional powers, duties, and obligations to the people of North Carolina generally ... constitutes significant interest in the controversy.").

*Wimberly v. Ettenberg,* 194 Colo. at 168, 570 P.2d at 539, held that bail bondsmen did not have standing to challenge a criminal pre-release program allowing defendants to post 10% of their bond rather than use a bondsman. We said that although the program might affect the business of bail bondsmen as a practical matter, it did so only indirectly since they could still serve any defendant choosing to use their services. *Id.* at 168, 570 P.2d at 539. The bail bondsmen also failed to establish a legally protected interest. "The statutory provisions concerning bail do not purport to vest any persons other than criminal defendants with any legal rights in the determination of the terms, amount, or condition of bail." *Id.* at 168–69, 570 P.2d at 539.

■ Unlike *Wimberly,* here the governor asserts that the General Assembly infringed on his power to veto a legislative act, an interest protected by the constitution. If the vetoes were valid, and the legislature simply chose to ignore them, the "delicate constitutional balance between the executive and legislative branches of government" would be upset. *Lamm*

*II,* 704 P.2d at 1377. The governor has alleged a wrong that constitutes an injury in fact to the governor's legally protected interest in his constitutional power to veto provisions of an appropriations bill. Therefore, the governor has standing to bring this action.

## II

The legislators assert that, even if the governor has standing to bring this action, the speech or debate clause of the Colorado Constitution makes them absolutely immune from suit. The district court accepted that argument and dismissed the governor's claims.

### A

Colorado's constitution, article V, section 16, provides that members of the General Assembly shall be free from arrest during sessions of the legislature, except for felonies or treason, "and for any speech or debate in either house, or any committees thereof, they shall not be questioned in any other place." The majority of states have adopted speech or debate clauses in some form, and most, including Colorado's, are similar to their federal counterpart, article I, section 6. We have not previously addressed Colorado's speech or debate clause; however, even though analysis of the federal constitution is not binding on questions of state constitutional law, cases interpreting the federal speech or debate clause provide guidance. *See MacGuire v. Houston,* 717 P.2d 948, 954–55 (Colo.1986).

In *Tenney v. Brandhove,* 341 U.S. 367, 373, 71 S.Ct. 783, 786–87, 95 L.Ed. 1019 (1951), the Supreme Court, quoting James Wilson, said the clause derived from the understanding that:

> In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense.

*Tenney* did not limit the confines of the immunity to the literal wording of speeches or debates, but instead extended it to any legitimate legislative activity. *Id.* at 376–77, 71 S.Ct. at 788. The Court held that the motives of a legislative investigating committee were irrelevant so long as investigations generally were within the sphere of legitimate legislative activity. *Id.* at 376–79, 71 S.Ct. at 788–89. The immunity recognized by *Tenney,* however, is not unlimited. If the clause applies, it affords absolute immunity, but the Court has granted relief "to sustain the rights of private individuals when it found Congress was acting outside its legislative role." *Id.* at 377, 71 S.Ct. at 788. "The courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province." To find that the activity was not legitimate, "it must be obvious that there was a usurpation of functions exclusively vested in the Judiciary or the Executive." *Id.* at 378, 71 S.Ct. at 789.

*Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), involved a challenge to Congress' decision not to allow Adam Clayton Powell to take his seat in the House of Representatives even though it acknowledged Powell met the qualifications set forth by the Constitution. Powell filed an action directly against members of Congress, the Sergeant at Arms, and the Doorkeeper, seeking injunctive relief and a declaratory judgment that the exclusion was unconstitutional. The Court dismissed the claims against the congressmen, holding that the speech or debate clause protected the legislators from the "burden of defending themselves." *Id.* at 505, 89 S.Ct. at 1955. The legislative action was reviewed and found unconstitutional, however, because there were remaining party-defendants. The Court said: "Given our disposition of this issue, we need not decide whether under the Speech or Debate Clause petitioner would be entitled to maintain this action solely against members of Congress where no agents participated in the challenged action and no other remedy was available." *Id.* at 506 n. 26, 89 S.Ct. at 1956 n. 26. *See also*

*Kilbourn v. Thompson,* 103 U.S. 168, 199, 26 L.Ed. 377 (1880) (speech or debate clause requires action be dismissed against member of Congress but does not bar reviewing the merits of challenged congressional action: "it is the province and duty of the judicial department to determine … whether the powers of … the legislature in the enactment of laws, have been exercised in conformity to the Constitution; and if they have not, to treat their acts as null and void.").

There is no question the judiciary has the power and duty to review the constitutionality of the footnotes and headnotes at issue here, or of the governor's purported veto. As noted in *Powell,* 395 U.S. at 486, 89 S.Ct. at 1944, that issue was settled in 1803. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). The question before us is whether constitutionality can be reviewed when the executive brings an action directly against the General Assembly and there are no other party-defendants. Unlike *Powell* and *Kilbourn,* this action will end if the members of the legislature are dismissed.

B

■ We can find no reason to analyze Colorado's protection for speech or debate any differently than the federal clause has been examined by the federal judiciary. *See MacGuire,* 717 P.2d at 954. The speech or debate clause has been read broadly to effect its purpose. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 501, 95 S.Ct. 1813, 1820, 44 L.Ed.2d 324 (1975); *Powell,* 395 U.S. at 502–03, 89 S.Ct. at 1954; *Kilbourn,* 103 U.S. at 204. The clause "insure[s] that the legislative function the Constitution allocates to Congress may be performed independently," and it was written into the Constitution to ensure "the independence of individual legislators." *Eastland,* 421 U.S. at 502, 95 S.Ct. at 1954 (quoting *United States v. Brewster,* 408 U.S. 501, 507, 92 S.Ct. 2531, 2534, 33 L.Ed.2d 507 (1972)). In our system of government, "the clause serves the additional function of reinforcing the separation of powers so deliberate-

ly established by the Founders." *Id.* (quoting *United States v. Johnson*, 383 U.S. 169, 178, 86 S.Ct. 749, 754, 15 L.Ed.2d 681 (1966)). The central role is "to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." *Gravel v. United States*, 408 U.S. 606, 617, 92 S.Ct. 2614, 2623, 33 L.Ed.2d 583 (1972); *Johnson*, 383 U.S. at 181, 86 S.Ct. at 756. When the clause applies, it "provides protection against civil as well as criminal actions, and against actions brought by private individuals as well as those initiated by the Executive Branch." *Brewster*, 408 U.S. at 502–03, 92 S.Ct. at 2532–33. Thus, the conduct of a member of the legislature may not be the basis for a civil or criminal judgment against that member unless the challenged acts fall outside the sphere of legitimate legislative activity. If not, the constitution affords that legislator absolute immunity. *Eastland*, 421 U.S. at 506, 95 S.Ct. at 1823; *Gravel*, 408 U.S. at 624, 92 S.Ct. at 2626; *Brewster*, 408 U.S. at 512, 92 S.Ct. at 2537; *Tenney*, 341 U.S. at 376, 71 S.Ct. at 788. The shield does not, however, extend beyond that which is necessary to "preserve the integrity of the legislative process." *Brewster*, 408 U.S. at 517, 92 S.Ct. at 2537. We reject the argument that members of the General Assembly can never be named as defendants in civil or criminal actions. If the legislator's actions fall outside the sphere of legitimate legislative activity, the clause does not apply, and the member may be questioned, *Hutchinson v. Proxmire*, 443 U.S. 111, 131, 99 S.Ct. 2675, 2686, 61 L.Ed.2d 411 (1979), or even convicted of violations of criminal statutes. *Brewster*, 408 U.S. at 507–29, 92 S.Ct. at 2534–46.

Here, the governor sought a declaration from the district court that the headnotes and footnotes were unconstitutional as substantive legislation included in an appropriations bill, that his vetoes of those notes were valid, and that ignoring those vetoes amounted to a violation of separation of powers.

### C

The governor's claim that the headnotes and footnotes are unconstitutional is akin to challenging the substance of a properly enacted bill. Such a challenge would normally be brought by one affected by the legislation bringing an action against the executive agency responsible for the statute's enforcement. *See, e.g., Lamm v. Barber*, 192 Colo. 511, 565 P.2d 538 (1977) (original proceeding brought by state Board of Equalization against county assessors who challenged constitutionality of a statute). Here, on the other hand, the governor named only the members of the General Assembly in their official capacity.

Whatever its limits, the speech or debate clause plainly protects legislators from inquiry into legislative acts or their motives for performing them. *Brewster*, 408 U.S. at 509, 92 S.Ct. at 2536. The clause also protects a member's agent or assistant for things done that "would have been legislative acts, and therefore privileged, if performed by the [member] personally." *Gravel*, 408 U.S. at 616, 92 S.Ct. at 2622. "The heart of the Clause is speech or debate in either House." *Id.* at 625, 92 S.Ct. at 2627. Properly enacted legislation is equally protected. The governor does not complain that the legislators usurped an executive function when they passed the footnotes and headnotes, but rather that the notes themselves are unconstitutional.

In *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986), Pennsylvania's supreme court held that legislators could not be personally liable for disbursements made under duly enacted legislation. "We believe that nothing is more basic to the independence and integrity of the legislature than its ability to pass legislation.... [N]othing is more with[in] the legitimate legislative sphere than the process leading up to and the passage of legislation." *Id.* at 172–73, 507 A.2d at 330–31. In *Holmes v. Farmer*, 475 A.2d 976, 984 (R.I.1984), the Rhode Island Supreme Court said "[i]nquiry by the court into the actions or motivations of the legislators in proposing, passing, or voting upon a particular piece of legislation ... falls clearly within the most basic elements of legislative privilege."

■ Although the constitutionality of the headnotes and footnotes may be reviewed by a court of competent jurisdiction, the legislators who passed those acts cannot be questioned or held liable in the process. Because the act of passing legislation falls squarely within the ambit of legitimate legislative activity, legislators and the General Assembly must be dismissed as defendants from that portion of the governor's action seeking a declaration that the headnotes and footnotes are unconstitutional. Because there are no remaining defendants, that part of the action must also be dismissed.

### D

The governor also requests a declaration that his vetoes were valid and that ignoring the vetoes amounted to an improper override, thus usurping an executive function. Here, unlike the first claim, the governor is directly attacking the procedure employed by the legislature as an encroachment into the executive sphere.

The General Assembly first argues the letters amounted only to an opinion that the vetoes were not valid, and were not, as the governor claims, improper override attempts. The letters, however, were not couched in terms of an opinion, but instead specifically stated it was unnecessary for the legislature to take action in response to the vetoes (which would have to be either an attempted override vote or filing an action in district court to declare the vetoes unconstitutional), and that the footnotes and headnotes "should be treated as duly enacted law."

If those letters were simply opinions, they do not fall within the legislative activity protected by the speech or debate clause. Acts performed by legislators in their official capacity are not necessarily "legislative in nature." *Gravel*, 408 U.S. at 625, 92 S.Ct. at 2627. Insofar as the clause is construed to reach matters outside actual speech or debate, those matters

> must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to

the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Id.; see also Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 529 (9th Cir.1983); *McSurely v. McClellan*, 553 F.2d 1277 (D.C.Cir.1976) ("'The Court has taken 'a decidedly jaundiced view towards extending the Clause so as to privilege illegal or unconstitutional conduct beyond that essential to foreclose executive control of legislative speech or debate and associated matters such as voting and committee reports and proceedings.'" (quoting *Gravel*, 408 U.S. at 620, 92 S.Ct. at 2624)). As *Gravel* noted, "[m]embers of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—*but such conduct, though generally done, is not protected legislative activity.*" 408 U.S. at 625, 92 S.Ct. at 2627 (emphasis added). The May 8, 1989, opinion letter to the governor, stating that the General Assembly believed the governor's veto was not valid, does not fall within the sphere of legislative activity that is protected by the speech or debate clause.

■ Even if the letter amounted to more than an opinion, the clause would still not necessarily apply. Protected activities have been interpreted by the Court to include the conducting of hearings, preparing and authorizing the publication of reports, *Doe v. McMillan*, 412 U.S. 306, 313, 93 S.Ct. 2018, 2025, 36 L.Ed.2d 912 (1973); delivering floor speeches, *Hutchinson*, 443 U.S. at 130, 99 S.Ct. at 2685; voting, *Gravel*, 408 U.S. at 624, 92 S.Ct. at 2626; investigations relating to subjects upon which legislation could be had, *Tenney*, 341 U.S. at 377, 71 S.Ct. at 788; and issuing subpoenas in conjunction with those investigations, *Eastland*, 421 U.S. at 503–05, 95 S.Ct. at 1821–22. *See* Comment, *Legislative Immunity and Congressional Necessity*, 68 Geo.L.J. 783, 801 (1973). Those areas are protected as within the sphere of legitimate legislative activity, notwith-

standing unconstitutional motives. Here, on the other hand, the governor claims the activity itself, an alleged improper override, violated the constitution and impermissibly infringed on the executive's power to veto legislation. It is incumbent upon the court, when such an allegation is made, to determine whether that act "may fairly be deemed within [the legislature's] province," *Tenney*, 341 U.S. at 378, 71 S.Ct. at 789, or, whether the act was part of the "*due* functioning of the" legislative process. *Brewster*, 408 U.S. at 516, 92 S.Ct. at 2539. "The employment of unlawful means to implement an otherwise proper legislative objective is simply not essential to legislating." *McSurely*, 553 F.2d at 1288.

We acknowledge that an allegation that the legislature unconstitutionally attempted to override a veto is similar to the allegation in *Powell v. McCormack*, in which the United States Supreme Court ordered the congressional defendants dismissed even though there was an allegation that Powell was kept from taking his seat in violation of the federal constitution. 395 U.S. at 506, 89 S.Ct. at 1956. In *Powell*, however, the plaintiff was seeking injunctive and declaratory relief, forcing upon the legislators the "burden of defending themselves." *Id.* at 505, 89 S.Ct. at 1955. The Court reviewed the actions of Congress by refusing to dismiss the noncongressional defendants, and expressly stated it was not resolving whether Powell could have maintained the action solely against Congress if there were no other agents participating in the challenged action and no other remedy available. *Id.* at 506 n. 26, 89 S.Ct. at 1956 n. 26. *See also Gregg v. Barrett*, 771 F.2d 539 (D.C.Cir.1985) (challenge to preparation of congressional record did not threaten independence of any individual member, or speech or debate itself, although court did not resolve issue of whether clause applied); *Vander Jagt v. O'Neill*, 699 F.2d 1166 (D.C.Cir.1982) (method of allocating committee seats to members not necessarily shielded by the clause), *cert. denied*, 464 U.S. 823, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983).

Other courts have reached similar results. In *State v. Kansas House of Repre-*sentatives, 236 Kan. 45, 687 P.2d 622 (1984), the state attorney general brought an original proceeding against the legislature and the governor seeking to determine the constitutionality of a state statute and a declaration that the legislature had exercised an executive function in the procedure it employed to pass the statute. Although the supreme court found that the legislature was immune from the action challenging the constitutionality of the statute, *id.* at 57, 687 P.2d at 633, it questioned whether the clause applied to an allegation of unconstitutional enactment:

> It is clear that if this case merely challenged the constitutionality of the statute on the ground that it violated the separation of powers doctrine the legislature would have to be dismissed from the suit on the grounds of absolute immunity. However, here the petitioner argues *the enactment of rules and regulations pursuant to the statute constitutes legislative usurpation of a function exclusively vested in the executive.* If this is so, the lawsuit would not be barred on the basis of legislative immunity under the Speech or Debate Clause.

*Id.* at 58, 687 P.2d at 634. The court did not resolve whether the executive could bring a direct action against the legislature since the governor was also a named party-defendant. Other courts have allowed direct challenges to the legislature by the executive to test actions taken by that legislature. *See Williams v. State Legislature*, 111 Idaho 156, 157, 722 P.2d 465, 466 (1986) ("The legislature may not prevent a constitutional officer from performing his constitutional duties."); *State v. Legislative Budget Comm.*, 347 So.2d 160 (La. 1977) (declaratory judgment challenging constitutionality of statute conferring power on governor to appoint members of the legislative budget committee); *State ex rel. Judge v. Legislative Fin. Comm.*, 168 Mont. 470, 543 P.2d 1317 (1975) (challenging action as unconstitutional delegation of legislative authority); *Thompson v. Legislative Audit Comm'n*, 79 N.M. 693, 448 P.2d 799 (1968) (statute removing duties

implicit in office of state auditor unconstitutional).

Moreover, the governor seeks a declaration that his vetoes are valid, rather than to hold the legislators personally liable for legislative activities. The members are not required to defend themselves, nor are deliberations or communications impaired. *See Gravel,* 408 U.S. at 625, 92 S.Ct. at 2627; *Brewster,* 408 U.S. at 512, 92 S.Ct. at 2537. It is also unnecessary to explore the motivation behind any legislator's actions. 408 U.S. at 512, 92 S.Ct. at 2537.

In the only Colorado case to discuss the scope of the speech or debate clause, *Lucchesi v. State,* 807 P.2d 1185 (Colo.App. 1990), the court of appeals dismissed the legislators who were named as defendants in an action challenging the constitutionality of a state taxing scheme. *Lucchesi* differs from this case in that the constitutionality of the statute was challenged rather than the underlying legislative procedure used to adopt it. Moreover, the court's statement that the clause is to "be interpreted to provide an absolute immunity for all actions naturally involved in the performance of any legislative functions," *Lucchesi,* at 1189, is too broad a reading of the immunity afforded by the clause in this context. Its protection is absolute, but only to those actions within the sphere of legitimate legislative activity.

"Our task [ ] is to apply the Clause in such a way as to insure the independence of the legislature without altering the historic balance of the three co-equal branches of Government." 408 U.S. at 508, 92 S.Ct. at 2535. The wrong alleged is a usurpation of the executive's power to veto. That allegation not only calls into question the constitutionality of the headnotes and footnotes, but also the governor's legally protected right to veto line items in an appropriations bill. Although any plaintiff adversely affected by the notes could bring suit to challenge their constitutionality, only the governor can enforce his right to veto as it is his legally protected interest at stake.

■ When the General Assembly is engaged in legitimate legislative activity, the speech or debate clause protects individual legislators and the legislature as a whole from being named defendants in an action challenging the constitutionality of legislation. When, on the other hand, an action challenges the constitutionality of the procedure employed to enact the legislation, it is incumbent on the judiciary to resolve whether the challenged actions fall within the sphere of legitimate legislative activity. If not, the speech or debate clause does not apply.

### III

■ Although the trial court did not address whether the General Assembly acted outside the sphere of legitimate legislative activity by ignoring the governor's vetoes, we can "apply the proper legal test to uncontroverted evidence in the record." *People v. Colorado Springs Bd. of Realtors, Inc.,* 692 P.2d 1055, 1068 (Colo.1984). In the interest of judicial economy, we choose to settle that question rather than remand to the trial court. *See Cherry Hills Resort Dev. v. Cherry Hills,* 790 P.2d 827, 831 (Colo.1990).

As noted previously, once the governor purported to veto the footnotes and headnotes, the legislature could respond in one of two ways: either attempt an override by a two-thirds majority vote, or bring an action in a court of competent jurisdiction contesting the validity of the governor's vetoes. Colo. Const. art. IV, § 11; *Lamm II,* 704 P.2d at 1377–79. Because the legislature chose instead to simply ignore the vetoes and demand that the footnotes and headnotes be treated as duly enacted law, it acted outside the sphere of legitimate legislative activity. Since there has not been a proper override or challenge, the vetoes are presumed to be valid.

Accordingly, we affirm the district court's dismissal of the governor's action seeking to review the constitutionality of the footnotes and headnotes. We reverse the dismissal of the action seeking a declaration that the legislative response to the governor's purported veto was outside the sphere of legislative activity. We hold that the General Assembly's action was not le-

gitimate legislative activity, and that the headnotes and footnotes are therefore presumed to have been vetoed absent a valid legislative override or judicial declaration to the contrary.

VOLLACK, J., specially concurs in the result only.

Justice VOLLACK specially concurring in the result only:

I concur in the result of the majority opinion only. In my view, it is unnecessary at this juncture to delve into the detailed analysis on the speech-or-debate clause of the Colorado Constitution presented by the parties and addressed in the majority opinion. I agree that it is appropriate to dismiss the Governor's action seeking a declaration as to the constitutionality of the footnotes and headnotes incorporated into the 1989–90 appropriations bill, but not on the basis that the legislators are immune from suit. Instead, it is my opinion that the Governor's action should be dismissed because the issue is now moot. The action involves a request for declaratory relief concerning the 1989–90 appropriations bill for the payment of the expenses of the executive, legislative, and judicial departments of the state of Colorado, and of its agencies and institutions, for the fiscal year beginning on July 1, 1989. The money allocated pursuant to that bill has long since been disbursed. I therefore would not address the limits of the speech-or-debate clause when a decision by this court on the constitutionality of the particular footnotes and headnotes should be limited to whether the Governor's veto was valid.

I agree with the majority's holding that the Governor's veto must be presumed valid, absent a proper legislative override or judicial declaration to the contrary. The focus of the Governor's request for declaratory relief is on his executive power and whether an infringement of that power has occurred. In my view, part III of the majority's opinion adequately disposes of the issue, and the speech-or-debate-clause analysis contained in part II(D) is unnecessary. It is sufficient to say that the legislature failed to respond properly to the Governor's veto, either by attempting to override the veto by a two-thirds majority vote, or by filing an action in court to contest the validity of the Governor's veto. *See* Colo.Const. art. IV, §§ 11–12. Absent a legislative override conducted pursuant to the procedures set forth in the Colorado Constitution, or a judicial declaration of invalidity, the Governor's vetoes must be presumed valid.

I do not view the issue of the validity of the Governor's veto moot because the enactment of the appropriations bill is an annual process and is therefore "capable of repetition, yet evading review." *Colorado–Ute Elec. Ass'n v. Public Utils. Comm'n*, 760 P.2d 627, 633 (Colo.1988). Not only is this particular dispute between the Governor and the legislature capable of recurring, it also involves a question of public importance and concerns the constitutional rights of the Governor to exercise his veto power. *See Parker v. People ex rel. Woods*, 135 Colo. 206, 208, 309 P.2d 605, 605 (1957). Thus, a decision by this court on the validity of the Governor's veto should issue.